Binder vs. McDonald.

*By the Court.*— Judgment affirmed.

BINDER, Respondent, vs. McDONALD, Assignee, Appellant.

*March 3 — March 20, 1900.*

*Appeal from order: Return: Refusal to exercise discretion: Bankruptcy act: Suspension of state insolvency laws: Voluntary assignment: Dissolution of attachment.*

1. An order refusing to dissolve an attachment, and the order to show cause upon which it was based, each recited that it was based on certain specified papers and the records and files in the case. On appeal the clerk certified that the papers annexed were "the original and all the papers and pleadings filed" in his office "in the above-entitled cause," except certain pages of the record which were certified to be true copies. *Held*, sufficient to identify the records and papers upon which the order was based.

Binder vs. McDonald.

2. Where the trial court has power, in its discretion, to do an act, a refusal to exercise such discretion on the ground that it has no such power is an error of law for which the order will be reversed; but the supreme court will not determine in what way such discretion should be exercised.

3. The mere enactment of the federal bankruptcy act of 1898 did not *ipso facto* suspend the operation of all state insolvency laws, or prevent the making of a voluntary assignment for the benefit of creditors, especially under a state law like ch. 80, Stats. 1898, which prohibits preferences except for six months' wages of employees,— although such an assignment would be voidable by proceedings under the bankruptcy act.

4. Under sec. 1694*a*, Stats. 1898 (providing that all attachments levied within ten days prior to the making of a voluntary assignment shall be dissolved and the property turned over to the assignee or receiver), our state courts still have jurisdiction, if there have been no proceedings in bankruptcy under the federal act, to determine a motion by the assignee to dissolve such an attachment.

5. Not the whole of ch. 80, Stats. 1898, is to be regarded as an insolvency law, but only certain features thereof. Remarks in *Holton v. Burton*, 78 Wis. 326, and *Second Ward S. Bank v. Schranck*, 97 Wis. 258, limited.

6. The right to make a voluntary assignment for the benefit of creditors, when not forbidden by statute, is inherent in a corporation as well as in an individual, and exists independent of the insolvency features of ch. 80, Stats. 1898.

APPEAL from an order of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Reversed.*

For the appellant there were briefs by *Felker, Stewart & McDonald,* and oral argument by *C. W. Felker.*

For the respondent there was a brief by *M. J. Wallrich* and *C. F. Dillett,* and oral argument by *Mr. Wallrich.*

CASSODAY, C. J.    It appears from the record that prior to July, 1899, the defendant Wittenberg Veneer & Panel Company was duly incorporated and organized under the laws of this state; that July 23, 1899, its factory was destroyed by fire; that the same was insured for upwards of $12,000, and that all of such insurance was put up as collateral secu-

Binder vs. McDonald.

rity to certain banks; that July 27, 1899, the plaintiff, *Binder*, commenced this action to recover $579.74 due on express contract from such corporation and one Thomas E. Daskam, and caused an attachment to be issued therein and levied upon certain real estate therein described and certain personal property; that the ground upon which such attachment was issued is to the effect that such corporation had assigned, conveyed, disposed of, or concealed, or was about to assign, convey, dispose of, or conceal, its property, or some part thereof, with intent to defraud its creditors, and that it fraudulently contracted the debt and incurred the obligation; that August 1, 1899, that corporation made a voluntary assignment of all its property for the benefit of its creditors to the defendant *Charles H. McDonald;* that August 11, 1899, *Charles H. McDonald*, as such assignee, traversed such attachment; that August 26, 1899, upon the verified petition of *McDonald* as such assignee, and upon the records and files in the case, the plaintiff was ordered to show cause September 7, 1899, why such attachment should not be dissolved and the attached property turned over to *McDonald* as such assignee; that upon the hearing of such motion, September 7, 1899, and upon such verified petition, records, and files, and the affidavits of M. J. Wallrich, Thomas E. Daskam, and A. H. Anderson, the court ordered that such motion be, and the same was thereby, denied, with $10 costs of motion, to be paid to the plaintiff's attorney.

In denying such motion the court filed a written opinion, which, under the title of the cause, is as follows: " Motion under section 1694*a*, R. S., to dissolve an attachment levied within ten days before the making of a voluntary assignment. The controlling question upon this motion is whether the existence of a federal bankruptcy law in full force and effect suspends the operation of chapter 80 of the statutes of this state, which chapter includes the section above mentioned. It seems to be well settled that the exercise by

Binder vs. McDonald.

Congress of the power conferred upon it by the constitution of the United States by the enactment of a general bankruptcy law *ipso facto* suspends the operation of all state insolvency laws. This raises the question whether chapter 80 is an insolvency law or not. My conclusion is that, with the additions and amendments which have from time to time been made to said chapter 80, it is an insolvency law, and that all of its provisions are now suspended and rendered inoperative by the existence of a general or federal bankruptcy law. For this reason alone, and without deciding any other question in the case, the motion is denied on the usual terms."

We are asked to dismiss the appeal because the clerk's certificate does not " show that the papers returned are the originals, or copies used on the hearing of the motion for the order from which the appeal is taken." It does show,. however, that the papers annexed " are the original and all the papers and pleadings which have been filed " in his " office in the above-entitled cause, except pages 1 to 13, inclusive, of the record, which are copies of the originals; " and the clerk also certifies that the thirteen pages have been carefully compared with the original record on file in his " office, and that the same are true and correct copies of the originals, and of the whole thereof." Such certificates and the order to show cause, mentioned in the statement, and the recitals in the order appealed from, also mentioned therein, would seem to be sufficient to identify the records and papers upon which the order was based. Circuit Court Rule XI.

Besides, we are not called upon to determine whether the trial court should have dissolved the attachment upon the merits, since, as indicated in the statement, that court denied the motion solely on the ground that it had no power to determine the question. This court has held that: " Where the trial court has power, in its discretion, to do an act, a

refusal to exercise such discretion on the ground that it has no such power is an error of law for which its order will be reversed; but this court will not determine in what way such discretion should be exercised." *Smith v. Dragert*, 61 Wis. 222. To the same effect, *Whitham v. Mappes*, 89 Wis. 671. The question, therefore, recurs whether the trial court had power to determine upon the merits the application to dissolve the attachment.

As indicated, the trial court held that the passage of the federal bankrupt law, July 1, 1898, *ipso facto* suspended the operation of all state insolvency laws, including sec. 1694*a*, Stats. 1898, wherein it is provided that if an insolvent debtor make a voluntary assignment for the benefit of his creditors within ten days after his property has been "attached or levied upon by virtue of any process in favor of a creditor or a garnishment is made against such debtor, . . . all such attachments, levies, garnishments or other process shall be dissolved and the property attached or levied upon shall be turned over to such assignee or receiver." The effect of the passage of such federal bankrupt law upon such state laws is, manifestly, a federal question, which may be ultimately determined by the supreme court of the United States. Until such determination by that court we must be governed by the import of its former decisions, and such aid as we may find in the decisions of other courts, and the law and reasons applicable to the case. After very able arguments and great deliberation, it was determined by the supreme court of the United States more than seventy years ago, that: "The power of Congress 'to establish uniform laws on the subject of bankruptcies throughout the United States' does not exclude the right of the states to legislate on the same subject, except when the power is actually exercised by Congress and the state laws conflict with those of Congress." *Ogden v. Saunders*, 12 Wheat. 213. See, also, *Tua v. Carriere*, 117 U. S. 201; *Cole v. Cunningham*, 133

U. S. 114; *Brown v. Smart*, 145 U. S. 457. Pending the bankrupt act of 1867, it was held by that court that "an assignment by an insolvent debtor of his property to trustees for the equal and common benefit of all his creditors is not fraudulent, and, when executed six months before proceedings in bankruptcy are taken against the debtor, is not assailable by the assignee in bankruptcy subsequently appointed; and the assignee is not entitled to the possession of the property from the trustees." *Mayer v. Hellman*, 91 U. S. 496.

Notwithstanding the provision of the Revised Statutes of the United States giving to the federal courts exclusive jurisdiction: " 6. Of all matters and proceedings in bankruptcy " (sec. 711), yet it was held, pending the bankrupt act of 1867, that the assignee in bankruptcy might sue in the state courts to recover the assets of the bankrupt; that although exclusive jurisdiction in such cases might be given to the federal courts, yet where it is not given, either expressly or by necessary implication, the state courts, having competent jurisdiction in other respects, may be resorted to; and that such jurisdiction of a state court is derived from its own constitution and laws. *Claflin v. Houseman*, 93 U. S. 130. To the same effect is *McKenna v. Simpson*, 129 U. S. 506, where it was held that "a state court has jurisdiction of an action brought by an assignee in bankruptcy to set aside, as made to defraud creditors, conveyances made by the bankrupt before the bankruptcy." These cases may be in conflict with some things said by this court in *Brigham v. Claflin*, 31 Wis. 607; *Bromley v. Goodrich*, 40 Wis. 131. The case in the supreme court of the United States peculiarly applicable here is *Boese v. King*, 108 U. S. 379, where it was held that: " A general assignment of a debtor's property, made for the benefit of creditors, purporting to be made under a state insolvent law which had, at the time of the assignment, been suspended in whole or in part by a bankrupt act, may never-

theless be sustained as sufficient to pass a title to assignees in the absence of proceedings in bankruptcy impeaching it, or of appropriate steps by the assignor for its cancellation." It was further held in that case that such an assignment, "made without intent to hinder, delay, or defraud creditors, is valid for the purpose of securing an equal distribution of the estate of the assignor among his creditors in proportion to their several demands, *except as against proceedings* instituted under the bankrupt act for the purpose of securing the administration of the property in a bankruptcy court." It is true that four of the justices dissented in that case on the ground that the insolvent law of New Jersey there in question was in conflict with the bankrupt act of 1867; but the decision of the court, we apprehend, is to be observed as the law by all inferior tribunals.

In the case at bar there is nothing in the record to indicate that any proceeding in bankruptcy has ever been commenced, much less pending. Of course, as against such proceedings under the bankrupt act, properly instituted, the assignee for the benefit of creditors and the state courts would readily yield to the paramount jurisdiction of the bankrupt court. *Blake, Moffitt & Towne v. Francis-Valentine Co.* 89 Fed. Rep. 691; *In re Bruss-Ritter Co.* 90 Fed. Rep. 651; *In re Sievers*, 91 Fed. Rep. 366; *In re Curtis*, 91 Fed. Rep. 737; *In re Smith*, 92 Fed. Rep. 135; *In re John A. Etheridge F. Co.* 92 Fed. Rep. 329; *In re Pittlekow*, 92 Fed. Rep. 901; *In re Curtis*, 94 Fed. Rep. 630; *In re Richard*, 94 Fed. Rep. 633. As held in the federal court in Massachusetts: "A general assignment for the benefit of creditors, though an act of bankruptcy and liable to be avoided by the subsequent adjudication of the assignor as a bankrupt, is not void originally, but only voidable. It remains valid until such adjudication is made." *In re Romanow*, 92 Fed. Rep. 510. To the same effect, *In re Ogles*, 93 Fed. Rep. 426; *In re Wright*, 95 Fed. Rep. 807; *Simonson v. Sinsheimer*, 95 Fed.

Rep. 948. Perhaps as extreme a case as any is the late Massachusetts case cited, where it was held that the provisions of the present bankrupt law that "this act shall go into full force and effect upon its passage" "so far supersedes the insolvency laws of this commonwealth from the time of its passage as to deprive our courts of jurisdiction to entertain the petitions for the commencement of insolvency proceedings filed after said date." *Parmenter Mfg. Co. v. Hamilton*, 172 Mass. 178, 1 Am. Bankr. Rep. 39, and note. No reference is made in that case to *Boese v. King* and other cases in the supreme court of the United States pending the bankrupt act of 1867, and cited above. We do not understand that the act goes so far as to prevent the making of a voluntary assignment for the benefit of creditors, especially under a state law like ours, which prohibits preferences, except a limited amount for wages to employees. As stated by Mr. Justice GRAY in one of the cases cited: "Each state, so long as it does not impair the obligation of any contract, has the power by general laws to regulate the conveyance and disposition of all property, personal or real, within its limits and jurisdiction." *Brown v. Smart*, 145 U. S. 457. True, this was said in reference to state insolvent laws in the absence of a national bankrupt law; but, as indicated by the adjudications cited, that law only supersedes such state laws or parts of state laws as are in conflict with it. Here the plaintiff, under the state law, seized property of its debtor on an attachment. Four days afterwards the debtor, under the state statute, made a voluntary assignment for the benefit of its creditors. Thereupon the assignee under the statute cited moved to dissolve the attachment, and the court held that it had no power to decide the question, even in the absence of any proceedings in bankruptcy. Although the making of the assignment was an act of bankruptcy, avoidable by proceedings in bankruptcy, yet, in our judgment, neither that assignment nor the motion to dissolve

the attachment was a matter or proceeding in bankruptcy within the meaning of the federal statutes and the federal adjudications cited.

Perhaps the learned trial judge was induced to decide as he did by reason of certain expressions found in some of the decisions of this court from which it might be inferred that the whole of ch. 80, Stats. 1898, is to be regarded as an insolvent law. *Holton v. Burton*, 78 Wis. 326; *Second Ward S. Bank v. Schranck*, 97 Wis. 258. Such was not the intention. What is thus stated in those cases must be regarded as relating to the insolvency features of that statute. The right to make such voluntary assignment for the benefit of creditors, when not forbidden by statute, is inherent in a corporation as well as an individual, and existed independent of the insolvency features of that chapter. *Vanderpool v. Gorman*, 140 N. Y. 563; *Garden City B. & T. Co. v. Geilfuss*, 86 Wis. 612.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.