ENNEST *v.* PERE MARQUETTE RAILROAD CO.

1. RAILROADS—RECEIVERS—ACTIONS—COMMENCEMENT—PROCESS— SERVICE—PRINCIPAL AND AGENT.

Service of a declaration and rule to plead upon the station agent of a railroad corporation, after the appointment f receivers by the Federal court and notice to the agent to continue his employment for the receivers as theretofore, is a valid and sufficient commencement of suit against the railroad company.

2. SAME.

The corporation continued to exist as a railroad company, although it was in the hands of receivers, and its station agent remained, for the purpose of serving process, the agent or employee of the corporation within the meaning of Act No. 260, Pub. Acts 1899 (5 How. Stat. [2d Ed.] §§ 13523, 13524).

Certiorari to St. Clair; Law, J. Submitted June 5, 1913. (Docket No. 5.) Decided July 9, 1913.

Case by Theodore Ennest against the Pere Marquette Railroad Company for personal injuries. Defendant filed a plea in abatement, which was overruled. Defendant brings certiorari. Affirmed.

*Bills, Parker, Shields & Brown,* for appellant.

*Stevens, Graham & Stevens,* for appellee.

STONE, J.    This case comes into this court on certiorari to review the order of the trial judge overruling defendant's plea in abatement to the declaration.   On October 24, 1912, plaintiff filed a declaration against defendant in the circuit court for the county of St. Clair, on which was indorsed a rule to plead.   A copy of this declaration, with notice of the rule to plead, was served on John J. Coryell, station and ticket agent at the Port Huron, Mich., station, a station along the line of the defendant railroad, on November 1, 1912. The plaintiff seeks to recover damages for personal injuries alleged to have accrued to him on December 31, 1911, by reason of the negligence of the defendant. The testimony taken on the trial of the issue formed on the plea in abatement shows that John J. Coryell had been, for about six years prior to April 5, 1912 (the date of the order creating the receivership hereinafter described), the station and ticket agent of defendant at the Port Huron station; that on that day he received notice from the receivers of their appointment, and afterwards acted under their control, and was so acting on November 1, 1912, as such station and ticket agent.   That notice was as follows:

"DETROIT, MICHIGAN, April 5, 1912.
"12 o'clock noon.
"All officers and agents of the Pere Marquette Railroad in the United States:
"By virtue of an order made this day by the district court of the United States for the eastern dis-

trict of Michigan, in the case of the American Brake-shoe and Foundry Company against the Pere Marquette Railroad Company, the undersigned have been appointed and have qualified as receivers of all the property and business of said Pere Marquette Railroad Company, of every kind and character and wherever situate and have taken possession and do hereby take possession of all such property and business and pursuant to the authority of the said court do hereby direct the continuance of said business in the names of the undersigned as receivers and until further orders substantially as it has been conducted theretofore.

"Until further orders all agents and employees *of the company* connected with the business will perform the duties heretofore performed by them, and make reports and remittances as heretofore. The depositories of the company will be the depositories of the undersigned and the existing tariffs and rules and regulations will remain in force until further notice.

"NEWMAN ERB,
"DUDLEY WATERS,
"FRANK BLAIR,
"Receivers."

The plea in abatement (filed with the plea of the general issue under the rule) alleges that John J. Coryell, the person upon whom the service of declaration with rule to plead was made, on November 1, 1912, was not at the date of such service an agent or employee of the Pere Marquette Railroad Company, and that the service of said declaration and rule to plead on him was wholly inoperative to bind the defendant, or to give the court jurisdiction over it. On the trial of the issue it appeared that on April 5, 1912, the defendant, by the order of the district court of the United States for the eastern district of Michigan, southern division, was placed in charge of the above-named receivers. This order gave authority to the receivers, among other things, to take possession of all the railroads and other property of the defend-ant—

"To run, manage, and operate the said railroads and property;  *  *  *  to maintain, preserve, and protect the said property and assets, and to keep the same in proper condition and repair, so that the same may be safely and advantageously operated and used;  *  *  *  to secure and develop the business of said railroad company;  *  *  *  to employ and discharge and fix the compensation of all  *  *  * officers, managers, superintendents, attorneys, agents, and employees, as in their discretion shall from time to time be needed in the performance of their duties as such receivers;  *  *  *  to keep the railroads and other property of said railroad company and its auxiliary companies employed and used in the manner in which they have heretofore been used and employed, so far as the said receivers, in their discretion, shall see it to be for the best interests of all parties concerned in the property and business of said railroad company;  *  *  *  to institute and prosecute all such suits as may be necessary in their judgment for the proper protection of the property, and trust hereby vested in them; and likewise to defend all actions that may be instituted against them, and also to appear in and conduct the prosecution or defense, as the case may be, of any suits now pending or hereafter commenced in any court against the said railroad company, the prosecution or defense of which will, in the judgment of said receivers, be necessary for the proper protection of the property and business placed in their charge.  *  *  *  That the said railroad company and its officers, directors, agents, and employees and all other persons claiming to act by, through, or under said company, and all other persons whosoever, be and hereby they are severally and collectively enjoined and restrained from interfering in any way whatever with the possession and management of any part of the property over which the said receivers are hereby appointed, or interfering in any way to prevent the discharge of their duties or their operating the same."

The learned circuit judge in stating his reasons for overruling the plea in abatement, in part said:

176 MICH.—26.

"As will be seen from the above brief extracts from this order, the court which made it contemplated that the receivers should operate and manage the defendant railroad temporarily. This receivership has not dissolved the corporation known as the Pere Marquette Railroad Company, nor does the proceeding contemplate the dissolution, or the winding up of the corporation. For the purpose of attaining certain ends the railroads and other property of defendant have, by order of the court, been taken from the possession and management of the regular officials of defendant, and given over to certain officers of the United States district court, called receivers. By this order the receivers are directed to operate the railroads of defendant. In other words, instead of being under the management and control of the regular officials of the corporation, the Pere Marquette Railroad was, on the 1st day of November, 1912, under the management of the receivers, but the Pere Marquette Railroad Company was still in existence. It was still a 'railroad company in this State.' It had a 'station agent' and 'ticket agent' at the Port Huron station, 'a station along the line * * * of the railroad of such company.' This station and ticket agent was John J. Coryell, the person served in this action on November 1, 1912. It is true that the record in this case shows that said agent, on notice from the receivers, attorned to them instead of his former superiors, the officials of the company. However, the Pere Marquette Railroad Company was still 'a railroad company in this State,' though its affairs were now under a different management, and Mr. Coryell, though now under the direction of the receivers, was still the station and ticket agent of 'a railroad company in this State' within the meaning of the statute to which I shall now refer, and still is such agent. Act No. 260 of the Public Acts of 1899 (5 How. Stat. [2d Ed.] §§ 13523, 13524), provides as follows:

" 'That whenever in any suit or proceedings, either in law or equity, it shall become necessary to serve any process, notice or writing upon any railroad company in this State, it shall be sufficient to serve the same upon any station agent or ticket agent at any station or depot along the line, or at the end of the railroad of such company.' "

That Mr. Coryell was the station and ticket agent at the station at Port Huron, of the railroad of the defendant, there can, we think, be no question.

Upon whom process shall be served in order to institute a suit against the artificial person known as a corporation is in this State a matter of statute; and, as here appears, we have a special statute governing service upon railroad companies. The question here raised seems to be a new one in this State, and we are at liberty to adopt the more reasonable rule. May it be said that in this case Mr. Coryell was, at the time of the service upon him, the proper person to receive service, notwithstanding his relation to the receivers? It is worthy of note that there was nothing in the order appointing the receivers, or in the notice served on the station or ticket agent, removing such agent from his former position. The language of the notice was significant:

"Until further orders all agents and employees *of the company* connected with the business will perform the duties heretofore performed by them, and make reports and remittances as heretofore."

Mr. Coryell might continue the agent of the company, for any purpose not inconsistent with his duty to the receivers. Such double agency is not rare. By the order appointing them the receivers. were authorized and empowered to appear and defend any suits which might be commenced against the company, the defense of which would in their judgment be necessary for the proper protection of the property and business placed in their charge. Any suit against the company to recover damages might well be said to be a suit affecting the property which they had in charge, and service of process on the station or ticket agent at any station on the line of the road might be to the advantage of such receivers. There would be nothing incompatible in Coryell maintaining his relation to the corporation, and to the receivers at the

same time. It is very evident that there is nothing found in this record justifying us in holding that he has ever been discharged from his position by either the company or the court. Outside of this State this question has been passed upon by the following courts of last resort, and the courts have differed in their conclusions: In the State of New York, in the case of *Faltisko* v. *Railroad Co.*, 12 Misc. Rep. 478, 33 N. Y. Supp. 679, affirmed in 151 N. Y. 650 (46 N. E. 1146), it was held that the appointment of a receiver of a railroad company does not affect the relation of a division superintendent as "managing agent" of the company, on whom the statute provides process against the company may be served, where he was never removed by the company, but retains his position after the appointment of the receiver. In Tennessee, in the case of *Simpson* v. *Railway Co.*, 89 Tenn. 304 (15 S. W. 735), it was held that suit against a railway corporation will not be abated upon its plea, averring that the suit had been brought after the road had passed into the hands of a receiver, and that process had been served upon a station agent of the receiver, where it appears that such agent had been originally employed by the company, and continued in the same service under the receivership. The court said:

"It will be remembered that this is no effort on the part of the receiver to abate suits by reason of a right to intervene and compel a discontinuance of actions except in court where the receivership with litigation involving it is pending but an effort by the company to deny its agent because its road had been placed in the hands of a receiver. In such case no reason appears to us why he does not still, in a proper sense, represent the company which in another is represented by the receiver."

See, also, *Louisville, etc., R. Co.* v. *Cauble*, 46 Ind. 277; *Grady* v. *Railroad Co.*, 116 N. C. 952 (21 S. E. 304).

Upon the other hand, defendant has called our attention to the following cases: *Cherry* v. *Railroad Co.,* 59 Ga. 446; *Heath* v. *Railway Co.,* 83 Mo. 617. *Cherry* v. *Railroad Co.* has been followed by the Georgia court in *Cain* v. *Railway,* 7 Ga. App. 461 (67 S. E. 127). Defendant claims that these last-cited cases hold that when the property of a railroad company has passed into the hands of receivers, and its road is being operated by them under an order of the court, service of process on one of the employees of the receivers will give no jurisdiction over the company. We think that the Georgia cases substantially so hold; but it is worthy of note that in *Cherry* v. *Railroad Co.* the court calls attention to the fact that the agent under the new arrangement was required to give, and did give, a bond to the State for the faithful performance of his duties, and that the agent had ceased to act for the company, and had become the agent of the State. In *Heath* v. *Railway Co.* it appeared that the injury complained of resulted from the acts of the receiver, or his agents, within the scope of his official duty in operating the road, and that the defendant had nothing to do with it, and, by virtue of the receivership, was prohibited from operating the train, which came in contact with the plaintiff's stock.

We are of opinion that the rule stated by the New York and Tennessee courts in the cases above cited is the better and more reasonable rule, and that the circuit judge did not err in overruling the plea in abatement.

The order of the circuit court is therefore affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN OSTRANDER, and BIRD, JJ., concurred.