CHRISTIAN, Appellant, vs. ·GREAT NORTHERN RAILWAY COMPANY, Respondent.

*March 11—April 6, 1920.*

*Railroads: Federal control: Service of process on company: Vacation of service of summons: Appeal: Return of motion papers without clerk's certificate that they were all the original papers: Bill of exceptions.*

1. On an appeal from an order vacating service of the summons which recited that it was made on the summons, the return of service, the records and proceedings, and an affidavit in support thereof, and that an affidavit in opposition thereto was filed, no bill of exceptions was needed, and it was sufficient for the clerk to return all the original papers,.although properly he should have certified that the papers returned by him were all the originals used on the hearing of the motion.

2. The President, in taking control of the railroads under the federal control act of March 21, 1918 (40 U. S. Stats. at Large, 451, ch. 25), did not take control merely of the physical properties, but of the entire organization, including officers, directors, and employees.

3. Under such act, a railroad freight agent during the period of federal control was an agent of the company and a proper person upon whom to serve the summons against the company, under sub. (6), sec. 2637, Stats. 1917.

APPEAL from an order of the superior court of Douglas county: SOLON L. PERRIN, Judge. *Reversed.*

April 7, 1919, the plaintiff, who was in the railway service, sustained an injury. At the time of the injury the federal government was in control of the property of the defendant company. The suit was begun by a service of the summons and complaint upon one J. P. Dooley on October 27, 1919. There was a motion to set aside the service of the summons and complaint, upon the ground that Dooley was not the agent of the defendant company, and upon that motion Dooley made an affidavit, of which the following is the material part:

"That on October 27, 1919, he was not in the service or employ of defendant, the *Great Northern Railway Company,* and was not on such day an agent, servant, or em-

ployee, or representative, in any capacity, of the *Great Northern Railway Company,* a corporation, but that on said October 27, 1919, he was and ever since December, 1917, has been and now is an agent and employee of the United States government, serving the director general of railroads in the capacity of freight agent."

It was further alleged in the affidavit that all of the persons, servants, employees, officers, or representatives serving or managing or controlling or operating the *Great Northern Railway Company* property in the state of Wisconsin were each and every one of them employed by and in the service of the director general of railroads.

The trial court granted the motion, and from the order vacating the service the plaintiff appeals.

For the appellant there was a brief by *Grace, Fridley & Crawford* of Superior, and oral argument by *W. P. Crawford.*

For the respondent there was a brief by *J. A. Murphy* and *H. G. Pickering,* both of Superior, and oral argument by *Mr. Pickering.*

ROSENBERRY, J.    The defendant has moved to dismiss the appeal for the reason that no bill of exceptions was settled.    It is the contention of the defendant that sec. 2872, Stats. 1917, which provides that written exceptions to orders made before judgment may be filed with the clerk with a written notice of entry of same, and be incorporated with the bill of exceptions, which may thereafter be settled, requires a bill of exceptions to be settled in order to have a review of the ruling of the trial court upon appeal from an order.

The motion to set aside the service of the summons and complaint was based upon the affidavit of J. P. Dooley, upon the summons returned, upon return of service thereon, and upon the records and proceedings in the action.    Upon the hearing there was filed in opposition to the motion the

affidavit of W. P. Crawford. The order recites: "said motion being based upon the summons returned in said action and upon the return of service thereon, and upon the records and proceedings had in said action; and upon the affidavit of J. P. Dooley;" and recites further the filing of the affidavit of W. P. Crawford in opposition to said motion. Written exception to the order was filed within the time required and in due form. Upon the appeal the clerk returned all of the original papers, including the affidavits referred to in the order of the court. Under the circumstances we think this is sufficient. *Binder v. McDonald,* 106 Wis. 332, 82 N. W. 156. It is not claimed that there was any oral testimony taken upon the hearing or that any matters other than those referred to were considered by the trial court. While the return of the clerk does not, as it should (*Carpenter v. Shepardson,* 43 Wis. 406), certify that the papers returned on the appeal are all the originals used on the hearing of the motion, the papers used are sufficiently identified in this case by the reference made to them in the recitals in the order of the court. *Glover v. Wells & Mulrooney G. Co.* 93 Wis. 13, 66 N. W. 799. The motion to dismiss the appeal is denied.

Upon the merits one question is presented: Was J. P. Dooley at the time of the service of the summons and complaint upon him the freight agent of the *Great Northern Railway Company?* Sub. (6), sec. 2637, Stats. 1917, provides that service may be had against a railway company upon the station, freight, or ticket agent of the company who shall reside within the county.

A decision of this question involves a consideration of the status of the railway company, its officers, agents, and employees during the period of federal control. The federal control act (40 U. S. Stats. at Large, 451, ch. 25) provided that carriers "while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in

so far as may be inconsistent with the provisions of this act
or any other act applicable to such federal control or with
any order of the President. Actions at law or suits in
equity may be brought by and against such carrier and judg-
ments rendered as now provided by law. . . ." It further
authorized the President to enter into contract with the
carriers in relation to matters therein described with great
particularity, "in order that the property of each carrier may
be returned to it in substantially as good repair and sub-
stantially as complete equipment as it was at the beginning
of federal control." By act of Congress passed August 29,
1916, the President was authorized "to take possession and
assume control of any system or systems of transportation,
or any part thereof, and to utilize the same, to the exclusion
as far as may be necessary of all other traffic thereon, for
the transfer or transportation of troops, war material and
equipment, or for such other purposes connected with the
emergency as may be needful or desirable." On December
26, 1917, pursuant to the authority conferred upon him, the
President issued a proclamation by which he took possession
and assumed control of each and every system of transporta-
tion and the appurtenances thereof within the United States,
and by such proclamation it was directed that "Until and
except so far as said director shall from time to time other-
wise by general or special orders otherwise provide, the
boards of directors, receivers, officers and employees of the
various transportation systems shall continue the operation
thereof in the usual and ordinary course of the business of
common carriers in the names of their respective compa-
nies."

While the President took absolute and undivided control
of the carriers of the country, and while during the period
of federal control they were wholly and absolutely within
the jurisdiction of the federal government acting through
the proper executive agencies, the purpose of the proclama-
tion, as well as the clear intent and purpose of the law, was

that the President should take possession of the carrier systems as systems. The President did not take control, and neither the language of the act nor the proclamation indicates that he undertook to take control, merely of the physical properties of the carriers, but he took over the complete system, that is, the entire organization, including the officers, directors, and employees, who transacted the business in the name of the company. Men were hired and discharged and their duties prescribed and compensation paid by the same organization which prior to the time of federal control had performed the like offices. The power of the President was exerted not immediately and directly upon the employees, but through the organizations which theretofore had handled the various properties. Dooley was therefore the agent of the defendant company, and a proper person upon whom service might be made. The act providing for the termination of federal control, approved February 28, 1920, defines federal control as "the possession, use, control, and operation of railroads and systems of transportation," and provides that "the President shall then relinquish possession and control of all railroads and systems of transportation." We find nothing in *Northern Pac. R. Co. v. North Dakota,* 250 U. S. 135, 39 Sup. Ct. 502, inconsistent with this determination. As is said in *Rutherford v. U. P. R. Co.* 254 Fed. 880, and *Mardis v. Hines,* 258 Fed. 945, the director general was in exclusive possession of the railroads and exercised an exclusive control over them. But such exclusive possession and exclusive control was through the boards of directors, receivers, officers, and employees of the transportation systems, who by executive order were to continue the operation of the railroads in the usual and ordinary course of the business of common carriers. If a superintendent of the defendant company discharged one station agent and employed another in his place, which in the absence of any specific direction from the director general he no doubt had power and author-

ity to do, the person discharged was released from the service of the director general, and the person employed entered such service by reason of the fact that he was the agent and employee of the company, although he was at the same time and in a larger view the agent and employee of the director general.   But he was such agent and employee of the director general because he was the agent and employee of the company.   It is a matter of common knowledge that when the period of federal control ended, not only the physical properties, but the entire organizations, with comparatively insignificant exceptions, continued in the performance of their duties without any re-employment or new arrangement, a fact which strengthens the conclusion which we have reached, that during the period of federal control they remained the officers, agents, and employees of their respective companies.   The trial court therefore erred in vacating the service of the summons and complaint.

*By the Court.*—The order appealed from is reversed, and the cause remanded for further proceedings according to law.