### Robert O. Boatright, Defendant in Error, v. Thomas D. Heed, Receiver, Plaintiff in Error.

1. RAILROADS—*when action against receiver not abatable for failure to sue Director General.* A suit for personal injuries against the receiver of a railroad, which was commenced and tried and in which damages were assessed after the taking over of the railroad by the government but before the issuance by the Director General of General Order No. 50, requiring that all suits for damages be brought against the Director General and not otherwise, was not subject to a plea in abatement on the ground that the suit should have been against the Director General instead of the receiver.

2. RAILROADS—*when action against receiver abatable for failure to sue Director General.* Upon the taking over of the railroads by the federal government, the employees of the railroads ceased to

be agents of the companies and became the agents of the Director General and, where suit was brought against the receiver of a railroad by service upon a station agent, a plea in abatement by the receiver should have been sustained.

3. APPEARANCE—*special appearance as affected by cross-examining witnesses.* Where defendant, receiver of a railroad, appeared specially in a suit for damages for personal injuries against him for the purpose of pleading in abatement on the ground that service of process upon a station agent, after the taking over of the railroad by the federal government, did not constitute service upon the receiver, he did not, by cross-examining witnesses as to the amount of damages, waive his special entry of appearance and submit himself to the court for all purposes.

EAGLETON, J., dissenting.

Error to the City Court of Marion; the Hon. W. O. POTTER, Judge, presiding. Heard in this court at the March term, 1920. Reversed and remanded. Opinion filed October 28, 1920.

DENNISON & SPILLER, for plaintiff in error.

FOWLER & DUTY, for defendant in error.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Robert O. Boatright, defendant in error, brought this suit against Thomas D. Heed, receiver of the Chicago & Eastern Illinois Railroad Company, plaintiff in error, to recover damages for personal injuries alleged to have been sustained by him on January 7, 1918, in a collision between two trains of plaintiff in error, on one of which he was at the time engaged in discharging his duties as a federal railway postal clerk. The declaration was filed to the April term, 1918, of the city court of the City of Marion. Summons was issued June 25 and served June 26, 1918, by the delivery of a copy to the station agent of plaintiff in error at the City of Marion.

On September 2, 1918, plaintiff in error filed the following plea in abatement: "And the said Thomas D. Heed who has been sued in this case as receiver of

the Chicago & Eastern Illinois Railroad Company, a corporation, in his own person, comes and specially appears for the sole purpose of filing his plea to the said writ, and for no other purpose and defends, etc., and prays judgment of said writ, because he says that the said writ purporting to be a writ of summons against Thomas D. Heed, receiver of the Chicago & Eastern Illinois Railroad Company, was not served upon said Thomas D. Heed, receiver of the Chicago & Eastern Illinois Railroad Company, and says that the return of the sheriff on the back of said writ of summons of said pretended service purporting to have been made upon the said Thomas D. Heed, receiver of the Chicago & Eastern Illinois Railroad Company, is wholly untrue and false, because, he says, that the said writ was served upon F. E. Morrison and upon no other person or persons, and that at the time of the issuing of the said writ, and at the time of the service of the said writ, the said F. E. Morrison was not a clerk, secretary, superintendent, general agent, cashier, principal, director, engineer, conductor, station agent, or any agent of any kind whatsoever of Thomas D. Heed, receiver of the Chicago & Eastern Illinois Railroad Company; that on December 26, A. D. 1917, possession of said Chicago & Eastern Illinois Railroad Company was taken over by the United States of America, under a proclamation of Woodrow Wilson, President, and said railroad has since been in possession of, operated and controlled by the said United States of America, through the United States Railroad Administration, W. G. McAdoo, Director General of Railroads, and that by reason thereof, the said Thomas D. Heed was not given the charge, management, control and possession of the said Chicago & Eastern Illinois Railroad Company, or operation thereof, on the date of his appointment as receiver of said railroad, on to wit April 27, 1918, by the District Court of the United States for the Northern District of Illinois,

Eastern Division, the Hon. George A. Carpenter, District Judge; that on the date of the issuance of said writ of summons in this case and on the date of the pretended service of the same, that the said F. E. Morrison was the agent of the federal management of the Chicago & Eastern Illinois Railroad Company, in the possession of, operated and controlled by the United States of America, through said United States Railroad Administration, W. G. McAdoo, Director General of Railroads, and was not the agent of Thomas D. Heed, receiver of the Chicago & Eastern Illinois Railroad Company; and that neither at the time of the issuance of the said writ of summons, nor at the time of the pretended service of the same was the said F. E. Morrison a clerk, secretary, superintendent, general agent, cashier, principal, director, engineer, conductor, station agent, or any agent of any kind whatsoever of the receiver of the Chicago & Eastern Illinois Railroad Company and this, he, the said Thomas D. Heed, receiver of the Chicago & Eastern Illinois Railroad Company is ready to verify.

"Wherefore, inasmuch as no service of the said writ has been had upon the said Thomas D. Heed, receiver of the Chicago & Eastern Illinois Railroad Company, he, the said Thomas D. Heed, who has been sued as receiver of the Chicago & Eastern Illinois Railroad Company, prays judgment of the said writ, and that the same may be quashed."

To this plea a replication was filed and the issue thus raised was tried before the court without a jury. The court found that the plea was not sustained by the evidence and refused to quash the writ. To this action of the court plaintiff in error excepted, and elected to abide his plea in abatement. A jury was then impaneled to assess defendant in error's damages and on the trial plaintiff in error, by his attorneys, cross-examined some of the witnesses defendant in error produced to prove his damages. The jury

assessed the damages at $250 and judgment was entered for that amount.

Plaintiff in error contends, First: That at and prior to the time of the injury complained of, the commencement of this suit and the trial thereof, the Chicago & Eastern Illinois Railroad was in the possession of and being operated by the United States government through W. G. McAdoo, the Director General of Railroads, and that the suit should have been brought against such Director General, and cannot be maintained against plaintiff in error. Second: That after the possession, control and management of the railroad was taken over by the United States government and it was being operated through the Director General of Railroads, the persons who had been employees and agents of plaintiff in error thereupon ceased to be his employees and agents and became the employees and agents of the Director General; that service of process on the station agent at Marion was therefore service on the agent of the Director General, was not valid service on plaintiff in error and did not give the court jurisdiction of the plaintiff in error.

Under Act of Congress of August 29, 1916, the President of the United States was given power in time of war to take possession and control of and to operate all transportation systems in the United States. Comp. Stat. (U. S.) sec. 1974a. By proclamation dated December 26, 1917, the President took possession of the railroads of the country, by virtue of the authority conferred upon him by said act. On March 21, 1918, the "Federal Control Act" passed by Congress was approved, by which an elaborate system was prescribed for the possession, operation and management of railroads, under the President, and by section 8 thereof he was granted power to execute the same through such agencies as he might determine. Comp. Stat. (U. S.) secs. 31153-4 A to 31153-4 P. Under the authority conferred by this act, the President on

March 29, 1918, issued a further proclamation whereby
W. G. McAdoo, Director General of Railroads, was
empowered to exercise all powers in the control and
operation of the railroads conferred by the "Federal
Control Act" on the President. The Act of Congress
of August 29, 1916, and the proclamation of the President
of December 26, 1917, provided, in substance,
that said systems of transportation should remain subject
to all existing statutes and orders of the Interstate
Commerce Commission, and to all statutes and
orders of the regular commissions of the various
States in which said systems, or any part thereof,
might be situated, until the said Director General
should otherwise, by general or special orders, direct.
The "Federal Control Act," approved March 21, 1918,
provided that, "carriers while under Federal control
shall be subject to all laws and liabilities as common
carriers, whether arising under State or Federal laws,
or at common law, except in so far as may be inconsistent
with the provisions of this act, or any other
act, applicable to such Federal control, or with any
order of the President. Actions at law or suits in
equity may be brought by and against such carriers,
and judgments rendered as now provided by law; and
in any action at law or suit in equity against the carriers,
no defense shall be made thereto upon the
ground that the carrier is an instrumentality or
agency of the Federal Government." On October 28,
1918, the Director General issued "General Order No.
50," providing that: "Actions at law, suits in equity
and proceedings in admiralty hereafter brought in
any court, based on contract binding upon the Director
General of Railroads, claims for death or injury to
persons, or for loss and damage to property, arising
since December 31, 1917, and growing out of the possession,
use, control or operation of any railroad or
system of transportation by the Director General of
Railroads, which action, suit, or proceeding, but for

Federal control, might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits or proceedings for the recovery of fines, penalties and forfeitures." It is clear that "General Order No. 50" issued by the Director General was the first order or act prohibiting the bringing of a suit of this nature against the carrier. The general order of the President taking over the railroads made December 26, 1917, provided that suits might be brought against such railroads as theretofore, until further order of the Director General. The "Federal Control Act," approved March 21, 1918, provided that actions at law or suits in equity might be brought against such carriers and judgments rendered as was then provided by law.

This suit was brought June 25, 1918, and summons served June 26, 1918. The plea in abatement was filed September 2 and on September 16, 1918, the issue raised by that plea was tried and the damages assessed. "General Order No. 50" was not issued until October 28, 1918, after this suit had already been tried and determined and cannot be relied upon to defeat the right of defendant in error to maintain the same. We must therefore hold that plaintiff in error's first contention is not well taken and this action was properly instituted against plaintiff in error. The Supreme Court of North Dakota indeed went further than this and in the case of *McGregor v. Great Northern Ry. Co.*, 42 N. D. 269, 172 N. W. 841, where the jurisdiction of the person was not raised, but where the cause of action arose and the action was begun after the assumption of federal control over the railroads, held, that the question of liability or nonliability was a judicial not an administrative question; that notwithstanding order No. 50, the plaintiff had a right to prosecute his claim against the railroad company;

that so far as that order denied to plaintiff the right to pursue the railroad company it was void and that the trial court erred in dismissing the case as to the railroad company and allowing the Director General to be substituted as the sole defendant. Whether or not service upon the station agent at Marion was legal service upon plaintiff in error is a more serious question which does not appear to have been passed upon by the courts of this State. We have been, however, assisted in arriving at a conclusion in regard to it by the reported decisions in several cases where the question has been under consideration by courts of other jurisdictions. In the case of *Mardis v. Hines,* 258 Fed. 945, the United States District Court for the Western District of Arkansas, said, in discussing the status of railroad employees, after the roads were taken over by the government: "From the time that the proclamation of the President became effective on December 28, 1917, the Director General as the representative of the President has been in the exclusive possession and control of the railroad. The railroad company exercises no control whatever. The railroad is operated under the orders of the Director General. The railroad company has nothing to do with such operation. When the Director General assumed control all the employees of the railroad ceased to be employees of the railroad company and became employees of the Director General. At that time the relation of master and servant ceased to exist between employees operating the railroad and the railroad company. That relation then began and still exists between such employees and the Director General." In *Wood v. Clyde S. S. Co.,* 257 Fed. 879 (District Court, S. D., Florida), where the question under consideration arose under a Florida statute, providing that service could be had upon a corporation by serving a business agent thereof resident in the county where the suit was brought, it was held that valid

service could not be had upon a transportation company by service of process on the agent of the United States railroad administration then in charge of operating the property, but who was not the agent of the corporation.

It is a contention of defendant in error that the station agent, F. E. Morrison, upon whom the writ was served in this case, was, prior to the issuance of "General Order No. 50," acting in a dual capacity and was agent of both Thomas D. Heed, receiver, and the federal government and therefore service of process on said Morrison was proper service upon said receiver. A contrary rule was declared, however, by the United States District Court for the Southern District of Georgia, in the case of *Southern Cotton Oil Co. v. Atlantic Coast Line R. Co.,* 257 Fed. 138, where the suit was brought against the transportation company for an injury claimed to have occurred prior to the time such company was taken over by the government and service was also had upon the person who had been an agent of the transportation company before that time. It was there said by the court upon this question, "there could be no divided allegiance as agents of the railroad company and of the Director General, so as to accomplish the purpose of Congress." It is also there further said: "The agents sought to be served in these cases had ceased to act for the corporation in the operation of the railroad. The corporation was out of control of the railroad, was out of possession, and had nothing for a superintendent or station agent to do. The former agents had ceased to be agents of the corporation pending federal control, and had become agents of the government. Hence service on the government's agents was not service on the corporation's agents, and the corporation has not been served under the Georgia statute, which permits service on a corporation by serving its agent." From a careful consideration of

the reasoning of the above cases we are led to believe that the same is well grounded and, in accordance therewith, we have arrived at the conclusion that at the time of the service of process in this case upon the station agent at Marion, he had ceased to be the agent of defendant in error and was at the time the agent of the Director General of Railroads. It follows that legal service has not been had upon plaintiff in error and the trial court should have sustained the plea in abatement for that reason. It is claimed, however, by defendant in error, that plaintiff in error, by cross-examining witnesses upon the question of the amount of damages, waived his special entry of appearance and submitted himself to the jurisdiction of the court for all purposes. An examination of the record discloses that the witnesses were cross-examined by counsel for plaintiff in error solely upon the question of the amount of damages and that the cross-examination was directed to those things which would tend to secure a reduction of the amount of the recovery. Such an examination of the witnesses as this, plaintiff in error was entitled to without waiving the question of jurisdiction, even though it was in default as to all issues except the one made by the plea in abatement upon which it had been defeated by the trial court. *Foreman Shoe Co. v. F. M. Lewis & Co.*, 191 Ill. 155. For the reasons above given the judgment in this case will be reversed and the cause remanded.

*Reversed and remanded.*

EAGLETON, J., dissenting.