PERZ v. PERE MARQUETTE RAILWAY CO.

1. RAILROADS — FEDERAL CONTROL—SERVICE UPON TICKET AGENT GOOD.
     Service of a declaration and rule to plead upon the ticket agent of a railroad corporation, after the Federal government had taken over the operation of said railroad as a war measure, was good and sufficient, in an action for personal injuries received before the government took control of said railroad.

For authorities discussing the question of liability of railroad companies while under Federal control, see notes in 4 A. L. R. 1680; 8 A. L. R. 969; 10 A. L. R. 956; 11 A. L. R. 1415; 14 A. L. R. 234; 19 A. L. R. 678.

On excessiveness of verdict in actions for personal injuries other than death, see comprehensive note in L. R. A. 1915F, 30.

2. Carriers—Railroads—Relation of Passenger and Carrier.

It cannot be said that plaintiff was not a passenger because he was a farmer riding on a miners' train running between the city and a mine and turned in a miner's ticket which was not good if detached, in view of evidence that the defendant's conductors always accepted said tickets from any one, including children, and that they frequently took the money and purchased a ticket from some miner on the train for a passenger or allowed the passenger to purchase same himself, where there was nothing in the orders of the Michigan railroad commission authorizing the sale of said tickets or on the tickets themselves limiting their use to miners.

3. Damages—Excessive Verdict.

A verdict for $1,000 cannot be said to be excessive, in view of evidence that plaintiff was entirely disabled for a year when wages were at their highest, that after he could work he received $2.50 per day at very light employment, that he was obliged to hire help to take care of his crops on the farm, that before he was injured he was a strong, healthy, able-bodied man, and that he sustained a double hernia as the result of the accident.

4. New Trial—Great Weight of Evidence.

Verdict *held*, not against the great weight of the evidence.

Error to Bay; Houghton (Samuel G.), J. Submitted October 4, 1923. (Docket No. 28.) Decided April 10, 1924.

Case by Frank Perz against the Pere Marquette Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Williams, Shields & Seaton* (*Edward S. Clark* and *W. B. Henry*, of counsel), for appellant.

*Kinnane & Leibrand*, for appellee.

Moore, J. Plaintiff was injured on September 19, 1917, while riding on a miners' train running from Bay City to the Whatcheer coal mine. The train on

the day in question was still on the main line when it collided head on with a north-bound passenger train. Plaintiff claims that he was thrown across the car and injured.    The damages claimed by him are for loss of time, physical injury to his person, including a hernia, and for pain and suffering.   · The defendant disputes the nature and the extent of plaintiff's injury and contends that the hernia which plaintiff claimed he sustained by the result of the collision was one of long standing.    Late in the year 1917 the Federal government took over the defendant railroad and other railroads as a war measure.    The suit in the instant case was commenced by declaration.    The return of service made by the sheriff is as follows:

"I hereby certify and return that on the 8th day of August, 1919, I served the declaration of which the within is a true copy, on Robert W. Berryman, ticket agent of the defendant at Bay City, Michigan, by delivering to said ticket agent at Bay City, in said county, a true copy thereof, with notice of rule to plead indorsed thereon as hereon indorsed."

On August 19, 1919, a motion was made to dismiss the case based upon the affidavit of Mr. Berryman that at the time of the service upon him he was in the employ of the United States railroad administration. Mr. Berryman was sworn as a witness and on his cross-examination testified in part as follows:

"After December 28, 1917, when the government took over the railroads our reports were all headed and made out United States railroad administration, but the same men were working for them and we reported to the same men only it was known as the United States railroad administration, and the same superiors that we were reporting to when the Pere Marquette was running the railroad were our superiors when the government was running them under Mr. McAdoo."

Upon the hearing of the motion counsel for the defendant cited *Southern Cotton Oil Co.* v. *Atlantic*

*Coast Line R. Co.,* 257 Fed. 138, and other cases. The trial judge was of the opinion that the case of *Ennest* v. *Railroad Co.,* 176 Mich. 398 (47 L. R. A. [N. S.] 179, Ann. Cas. 1915B, 594), was controlling and overruled the motion to dismiss the case. Later the plea of the general issue with notice of special defenses was filed and the case was tried. The plaintiff obtained a verdict of $1,500. The defendant moved for a judgment *non obstante veredicto.* The trial judge overruled this motion but ordered a new trial unless the plaintiff remitted the verdict to $600. The plaintiff moved to vacate this order. This motion was opposed by the defendant and it was overruled. The plaintiff declined to remit to $600. The case was again tried when plaintiff obtained a verdict and judgment for $1,000. A motion by the defendant was made for a new trial. This motion was overruled and the case is in this court by writ of error.

Defendant's claims may be grouped as follows:

(1) That no service of process was obtained on the defendant.

(2) That plaintiff was not a passenger at the time of the accident.

(3) The verdict is against the great preponderance of the evidence and is excessive.

As to the first of these groups, plaintiff insists that, by opposing the motion to vacate the order requiring plaintiff to remit to $600, or take a new trial, and by its motion for a new trial after the second trial, defendant asked for affirmative relief and thereby waived the question of jurisdiction. We think it unnecessary to pass upon that phase of the case, but will proceed directly to the question of whether the service of the declaration is good.

Counsel for the appellant rely here as it did in the court below upon the case of *Southern Cotton Oil Co.* v. *Atlantic Coast Line R. Co., supra.* That case would seem to sustain the contention of counsel, but the

opinion which is very short seems to be based upon *Cherry* v. *Railroad Co.*, 59 Ga. 446, and other cases which this court declined to follow in *Ennest* v. *Railroad Co.*, *supra.*

Counsel call attention to the case of *Boatright* v. *Heed*, 222 Ill. App. 398, where the service was upon the agent of the director general instead of upon the agent of the receiver, and it was held that the service was not good.   It must be conceded that the authorities are not uniform.   In the instant case the accident happened before the director general took over the railroads.   If there is any liability it is the liability of the Pere Marquette Railway Company.   That company did not go out of existence because it passed under the control of the general government temporarily, nor did its debts become extinguished by the fact.   Much of the language used by Justice STONE in *Ennest* v. *Railroad Co.* is germane here.   The case is so accessible that we do not quote from it.

In the case of *Christian* v. *Railway Co.*, 171 Wis. 266 (177 N. W. 29), it was held that a railroad freight agent during the period of Federal control was an agent of the company and a proper person upon whom to serve the summons against the company.   This opinion is in line with the reasoning expressed by Justice STONE in *Ennest* v. *Railroad Co.*, *supra.*   We think the service was good.

The defendant claims plaintiff was not a passenger at the time of the accident.   This claim is based upon the fact that he is a farmer and was traveling upon a train running between Bay City and the Whatcheer mine, called a miners' train, and turned in a ticket which it is claimed could not be used when detached, and could be used only by a miner.   Counsel cite several authorities upon this feature of the case, but especially rely upon *Harmon* v. *Jensen*, 100 C. C. A. 115, 176 Fed. 519 (20 Ann. Cas. 1224), and *Van Auken* v. *Railroad Co.*, 182 Mich. 331.   We think

it will appear that these cases are distinguishable from the instant case, when it appears later what the circumstances were under which the tickets were issued and the use which was made of them.   The tickets were used under the special permit of the Michigan railroad commission.   The order for their issuance was signed by the general passenger agent of defendant company, and contained the following:

"Baggage: No baggage will be checked on these tickets.
"Stop over: No stop over allowed.
"Children's fare: No reduction from above fares will be made for children.
"Conditions: Tickets are valid in either direction. Tickets are good for bearer and party, one coupon being detached by conductor for each person, for each trip."

The ticket itself contained the following:

"Valid for transportation of bearer or bearer and party.
"Only on miner's train on the direction between Bay City and What Cheer mine.   When presented with coupons and cover attached within 60 days from date of issue, subject to conditions named in contract attached to and made part hereof.   No baggage will be checked on this ticket.
                    "Contract.
"In consideration of the reduced rate at which this ticket is sold the purchaser agrees that its use shall be subject to the following conditions:
"1st. That it is good for passage only on miners' trains which are advertised to stop regularly at the stations named hereon, and that it conveys no stopover privileges.
"2nd. That one coupon will be detached by conductor for each person riding in either direction.
"3rd. That it will be valid for passage only if used within 60 days from date of issue as shown above. That it will be surrendered to the conductor on the last trip or on expiration of the time limit, whether all the coupons representing rides have been canceled or not.

"4th. That no baggage will be checked on this ticket.
"5th. It is void for passage if any alterations or erasures are made hereon."

There is no suggestion anywhere in the various orders or on the tickets that these tickets can be used only by a miner, and the statement that "no reduction from above fares will be made for children" gives rise to a fair inference that they could be used for children, who are certainly not miners. It may be well to show how the tickets were used. We quote some of the testimony of a witness who used them from the time they began to be used:

"I have been working in the Whatcheer mine ever since it started, 17 or 18 years, and have ridden out on that train a good many times, and I have sold them tickets to different ones. I have seen many people riding on the train that weren't miners, lots of them, men, women and children. Some of them got their tickets from miners, and some I don't know where they got them. I have seen other miners sell tickets. The conductor always took those tickets, or if he didn't take them he would take the nickel and go and get a ticket for it. The same condition exists yet, riding back and forth and people riding on the train in the way I have described. I am the first man that rode the first train out there, 17 or 18 years ago, and during all that time I have seen miners selling those tickets to anybody that wanted to ride. The conductor would take them or take the nickel and get one from the miner."

Several witnesses gave similar testimony. The plaintiff on the morning of the accident bought and paid for his ticket and it was accepted by the conductor, as was his custom for a long time. See the late case of *Thurston* v. *Navigation Co.*, 205 Mich. 278, 280; 2 Comp. Laws 1915, § 8113, subd. *b*; *Thompson* v. *Truesdale*, 61 Minn. 129 (63 N. W. 259, 52 Am. St. Rep. 579). We think it can be said plaintiff was a passenger.

Was the verdict excessive and against the great preponderance of the evidence? The trial judge was of the opinion that question should be answered in the negative. The testimony was very conflicting. There was testimony given tending to show that plaintiff was entirely disabled for a year when wages were at their highest; that after plaintiff could go to work he received $2.50 per day at piling stove wood, a very light employment. There was testimony also that he was obliged to hire help to take care of his crops on the farm; that before he was hurt plaintiff was a strong, healthy, able-bodied man, who for his age was capable of doing much labor, and that he sustained a double hernia as the result of the accident. This testimony presented questions of fact which were clearly within the province of the jury.

The judgment is affirmed, with costs to the appellee.

CLARK, C. J., and McDONALD, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.