MARDIS v. HINES, Director General of Railroads, et al.

(District Court, W. D. Arkansas, Ft. Smith Division. July 17, 1919.)

No. 792.

RAILROADS ☞5½, New, vol. 6A Key-No. Series—FEDERAL OPERATION OF ROAD—RIGHT TO SUE CARRIER.

Under Act Aug. 29, 1916, Presidential Proclamation of Dec. 26, 1917 (Comp. St. 1918, § 1974a, note), whereby the President assumed control of railroads, together with Act March 21, 1918 (Comp. St. 1918, §§ 3115¾a–3115¾p) and in view of General Order No. 50 of the General Director of Railroads, *held* that action cannot be maintained against a railroad company for injuries to a passenger resulting from negligence of employés occurring after the President had assumed control of railroads, for Act March, 1918, did not annul the previous presidential proclamation as to orders of the Director General, and the employés of the railroad being no longer subject to the orders of the railroad company, the maxim respondeat superior does not apply.

At Law. Action by Earle J. Mardis against Walker D. Hines, Director General of Railroads, and the Missouri Pacific Railroad Company. On separate demurrer of the Missouri Pacific Railroad Company. Demurrer sustained.

H. H. Ragon, of Clarksville, Ark., and Jeptha H. Evans, of Boonville, Ark., for plaintiff.

Thos. B. Pryor, of Ft. Smith, Ark., for defendants.

YOUMANS, District Judge. This is a suit by plaintiff, Mardis, against Walker D. Hines, Director General of Railroads, and the Missouri Pacific Railroad Company, for an injury sustained by the plaintiff while being transported as a passenger.

The amended complaint makes the following allegations:

"Walker D. Hines, as successor to William G. McAdoo, is the Director General of Railroads in the United States, having control for war and other purposes of the railroads in the United States, including the railroads of the defendant, Missouri Pacific Railroad Company.

"The Missouri Pacific Railroad Company is a railroad corporation of the state of Missouri, and on and prior to the 28th day of December, 1917, it was engaged in the business of a common carrier of freight and passengers for hire over its railroads. One of its railroads over which on said date it was doing the business of a common carrier of passengers and freight for hire extends through the counties of Pope, Johnson, Franklin, Crawford, and Sebastian in the state of Arkansas, with stations on its said line of road in each of said counties. On said 28th day of December, 1917, the President of the United States of America by his proclamation dated December 26, 1917 (Comp. St. 1918, § 1974a, note), under and by virtue of the power conferred on him by the Act of Congress of August 29, 1916, c. 418, 39 Stat. 619, took control of the railroad transportation systems in the United States, including the railroads of the defendant Missouri Pacific Railroad Company. In said proclamation it is provided as follows: 'It is hereby directed that the possession, control, operation, and utilization of such transportation systems hereby by me undertaken shall be exercised by and through William G. McAdoo, who is hereby appointed and designated Director General of Railroads. Said director may perform the duties imposed upon him, so long and to such extent as he shall determine, through the boards of directors, receivers, officers and employés of said systems of transportation. Until and except so far

as said director shall from time to time by general or special orders otherwise provide, the boards of directors, receivers, officers and employés of the various transportation systems shall continue the operation thereof in the usual and ordinary course of the business of common carriers in the names of their respective companies.'

. "The directors, officers, and employés continued to operate the railroad of the defendant company as authorized and provided for in the above-quoted paragraph of the proclamation of the President of the United States.

"On the morning of January 26, 1918, at Clarksville, Johnson county, Ark., the plaintiff became a passenger for hire on the west-bound passenger train of the defendant company, commonly called the 'Dinky,' running from Russellville, Ark., to Ft. Smith, Ark. The plaintiff was seated in the front end of the smoking car on said train, and when the train on which he was a passenger was a short distance east of the station of Denning Yards in Franklin county, Ark., and running west, it collided, head-on, with a freight train of defendant company, running east on the same track, meeting the passenger train on which plaintiff was riding as a passenger.

"By said collision both trains or portions thereof were wrecked or damaged, and the plaintiff was thrown with great force and violence several times against the walls, floor, and furniture of the car in which he was riding, and the plaintiff was greatly and permanently injured thereby in his right wrist and in his back and hips; one of plaintiff's dorsal vertebræ was dislocated, and his spine was otherwise injured, and the muscles, flesh, and nerves of his back were wrenched, bruised, and torn, and his entire nervous system was shocked and permanently injured.

"Said collision and consequent injury to the plaintiff were caused by the negligence of the engineer, conductor, and other servants of the defendant company who were operating said freight train, in running said train east out of Denning Yards on the track and time of the passenger train on which plaintiff was a passenger, and by the negligence of said defendants in causing, allowing, and permitting the passenger train on which plaintiff was being transported and the freight train with which it collided to run in opposite directions, meeting each other on the same track, at the same place, and at the same time. * * *

"By reason of the injuries so caused to him by the negligence of the defendants the plaintiff has sustained damages to an extent that he is unable fully to estimate, but he places the same at the sum of $50,000.

"By section 6661 of Kirby's Digest of the statutes of the state of Arkansas the plaintiff has a lien on the railroad of the defendant company in the state of Arkansas for the damages aforesaid, and said lien applies to the roadbed, building, equipments, income, franchise, right of way, and all other appurtenances of said railroad superior and paramount, whether prior in time or not, to that of all persons interested in said railroad as managers, lessees, mortgagees, trustees, and beneficiaries under trusts or owners.

"The premises considered, the plaintiff prays that he have judgment for said sum of $50,000 damages, for costs of suit and for all legal relief, and that his lien upon the railroad as above set out be established and declared in the judgment rendered by the court."

· The railroad company demurs separately to the complaint on two grounds:

(1) That the complaint does not state facts sufficient to constitute a cause of action against it.

(2) That plaintiff has not a lien on the railroad for the damages alleged to have been sustained by him.

From the allegations of the amended complaint it is clear that plaintiff's injury occurred after control of the railroad was taken by the Director General under the proclamation of the President. The extent of such control under the acts of Congress and the proclamation of the President is set out by Chief Justice White in the

case of Northern Pacific Railway Co. et al. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. ——, decided June 2, 1919, as follows:

"No elaboration could make clearer than do the act of Congress of 1916, the proclamation of the President exerting the powers given, and the act of 1918, dealing with the situation created by the exercise of such authority, that no divided but a complete possession and control were given the United States for all purposes as to the railroads in question. But if it be conceded that despite the absolute clarity of the provisions concerning the control given the United States, and the all-embracing scope of that control, there is room for some doubt, the consideration of the general context completely dispels hesitancy. How can any other conclusion be reached if consideration be given the comprehensive provisions concerning the administration by the United States of the property which it was authorized to take, the financial obligations under which it came, and all the other duties and exactions which the act imposed, contemplating one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing."

From the time that the proclamation of the President became effective on December 28, 1917, the Director General as the representative of the President has been in the exclusive possession and control of the railroad. The railroad company exercises no control whatever. The railroad is operated under the orders of the Director General. The Railroad Company has nothing to do with such operation. When the Director General assumed control all the employés on the railroad ceased to be employés of the railroad company and became employés of the Director General. At that time the relation of master and servant ceased to exist between the employés operating the railroad and the railroad company. That relation then began and still exists between such employés and the Director General.

In the case of Brady v. Chicago & G. W. Ry. Co., 114 Fed. 100, 107, 52 C. C. A. 48, 55 (57 L. R. A. 712), Judge Sanborn speaking for the United States Circuit Court of Appeals for the Eighth Circuit, said:

"The power of control is the test of liability, under the maxim respondeat superior. If the master cannot command the alleged servant, then the acts of the latter are not his, and he is not responsible for them. If the principal cannot control and direct the alleged servant, then he is not his agent, and the principal is not liable for his acts or his omissions. In such case the maxim respondeat superior has no application, because there is no superior to respond. In an action against an alleged master or principal for the act of his alleged servant or agent under the maxim respondeat superior, there can be no recovery in the absence of the right and power in the former to command or direct the latter in the performance of the act charged, because in such a case there is no superior to answer."

The railroad, therefore, cannot be held for the negligence of the employés of the Director General, unless liability is imposed by section 10 of the act of Congress of March 21, 1918 (40 Stat. 456, c. 25 [Comp. St. 1918, § 3115¾j]). That section provides:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws, or at common law, except so far as may be inconsistent with the provisions

of this act or any other act applicable to such federal control or with any order of the President."

Is the liability sought to be fastened on the railroad company under the facts alleged in the complaint in this case inconsistent with the provisions of the acts of Congress referred to, or with the order of the President?

In the proclamation of the President assuming control of the railroads it was provided that—

"Suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said Director General may, by general or special orders, otherwise determine." Pages 89–91, Proclamations 1917, pt. 2, Statutes U. S. 1917–1918 (Comp. St. 1918, § 1974a, note).

That proclamation, as indicated by the foregoing quotation, authorized the Director General to modify or change the permission given in the proclamation to bring suits against carriers. The act of March 21, 1918, did not modify any of the provisions of the proclamation of the President. On October 28, 1918, by General Order No. 50, the Director General ordered "that actions at law, suits in equity and proceedings in admiralty hereafter brought in any court based on contract binding on the Director General of Railroads, claim for death or injury to persons, or for loss and damage to property arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad system or transportation by the Director General of Railroads, which action, suit or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise."

In this case it is alleged that the injury was sustained on the 26th of January, 1918. That was after the Director General assumed control. This suit was brought in the Johnson county circuit court on January 21, 1919. This was after the date of General Order No. 50. The order of the Director General does not contravene the acts of Congress. It is authorized by the proclamation of the President, and directs a procedure that is in strict accordance with the actual facts and the rules of legal liability. Rutherford v. Union Pacific R. R. Co. (D. C.) 254 Fed. 880; Dahn v. McAdoo (D. C.) 256 Fed. 549.

In my opinion the judgment sought to be recovered against the railroad company is inconsistent with the acts of Congress and the order of the President.

The separate demurrer of the railroad company must be sustained on the ground that the amended complaint does not state a cause of action against it. The second ground of demurrer with regard to the lien is included in the first, and judgment on the first will cover the second.