MOBILE & O. R. CO. *v.* JOBE.

[84 South. 910, In Banc. No. 21166.]

1. RAILROADS. *Road under federal control suable for penalty.*
   Under the Federal Control Act of March 21, 1918 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, sections 3115¾a–3115¾p), a suit for state statutory penalty may be instituted against the railroad company instead of the Director General in control at the time the penalty was incurred.

2. RAILROADS. *Federal Control Act held to invalidate executive order.*
   General Order No. 50, requiring suits to be filed against the Director General instead of the railroads, is in conflict with the Federal Control Act, and must give way to the act.

3. RAILROADS. *Suits for penalties, incurred during federal control not within executive order.*
   General Order No. 50 amounts to a mere invitation to bring suits against the Director General instead of the railroads, excepting, however, suits for fines, penalties, and forfeitures.

4. Constitutional Law. *Railroads. Federal Control Act constitutional, government being liable for losses.*

The Federal Control Act is constitutional as not denying equal protection of the laws, nor taking property without due process of law; the government being liable to the railroad for such penal recovery, when operating and controlling the railroad at the time the injury occurred.

Appeal from circuit court of Alcorn county.
Hon. C. P. Long, Judge.

Action by Mrs. Love Jobe against the Mobile & Ohio Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*J. M. Boone,* for appellant.

Counsel for appellee plants himself squarely upon that part of section 10 of the Act of Congress of March 21, 1918, which reads: "Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law, and in any action at law or suit in equity against the carrier no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government."

In our original brief in this cause, we attempted to show that the Mobile & Ohio Railroad Company was not liable under the said act, or any other law, for a tort of the Director General of Railroads of the nature of the one upon which this suit is based. We cited numerous cases holding that the railroad company would not be liable for the legitimate acts of the Director General of Railroads in his operation thereof, and also that the railroad corporation would not be liable for the negligence of the Director General or his employees causing damages to any one in his operation of the railroads. We also call the attention of this court to

the fact that while the lower courts had differed in their construction of the said section 10 of the Act of Congress of March 21, 1918, yet we had not been able to find a single case decided subsequent to the decision of the United States supreme court in the case of *Northern Pacific Railroad Co.* v. *North Dakota,* 250 U. S. 135, which had held the railroad corporation liable for the acts of the Director General.

We contended in our original brief that if said section 10 should be construed to permit judgments against the railroad corporation for the acts of the Director General, over which the railroad corporation had no control and nothing to do with the performance thereof, that the act would be unconstitutional. Since writing the original brief, we have read the case of *Shumacher* v. *Pennsylvania R. Co.,* 175 N. Y. Supp. 84, in which case it is held that the railroad company was liable under said section 10 of the Act of March 21, 1918, and that said section 10 of the Act of March 21, 1918, was unconstitutional because it subjected to liability and seizure the property of railroad companies for injuries while its property is under federal control, and that it was also unconstitutional because of taking private property for public use without just compensation and because it deprived the railroad of the equal protection of the law in subjecting its property to liability while its property was under federal control.

Mr. Sweat, in his brief for appellee, page 6, recognizes Federal Order No. 50 of the Director General as being valid and binding in that it prohibits suits being brought against the Director General for fines, penalties and forfeitures, and yet, on page 7 of his brief, he contends that: "The Director General would have no authority under this statute to say that suits must be brought against him instead of the carrier." He recognizes the authority of the Director General when it is to his

benefit and denies his authority *in toto* when against him.

Appellee further relies in his brief upon the familiar maxim that "for every wrong there is a remedy." We have never seen where this maxim, in order to get a remedy for a wrong, would authorize any kind of remedy against any other person except the wrongdoer. The fact, if it be true, that you could not sue the wrongdoer, could not confer a right of action against a third innocent party.

Appellee in his brief, says that the exact defense being set up in this case by appellant is that it is an instrumentality of the Federal Government. In that he is wholly mistaken. We say that the Director General may be an agency of the Federal Government, but our complaint is that the act for which we are sought to be held liable was committed by the Director General while in the complete and unrestrained legal possession of our property and that we are not liable for said act, as we had nothing whatever to do with the committing of said act.

We have no occasion to assert that defense for the Mobile & Ohio Railroad Company, as it is not an instrumentality or agent of the government after its control of its properties had terminated. We think the opinion of the court in *Rutherford* v. *Union P. R. Co.,* 254 Fed. 880, is clear and sound in its reasoning.

In appellee's brief the case of *McGregor* v. *Great Northern Ry. Co.,* 172 N. W. 841, is cited. The majority opinion in the said case supports the contention of appellee; but we invite special attention of the court to the dissenting opinion rendered in said case by Bronson, J.

In arriving at a correct solution of this question, it is proper to take into consideration that the Act of Congress, March 21, 1918, was enacted in the light of the Act of Congress of August 29, 1916, and the Procla-

mation of the President under said act made December
26, 1917, in which Proclamation the President saw fit
to exercise his authority, granted him by the Congress
through McAdoo as Director General of the Railroads,
and in which Proclamation he gave the Director Gen-
eral power to pass orders, general or special, which
orders should have paramount authority and be obeyed
as such. The Congress then, on March 21, 1918, fol-
lowed up this Proclamation of the President and, recog-
nizing his authority and power under the previous Act
of Congress, provided in this section 10 that: "Car-
riers, while under federal control, shall be subject to
all laws and liabilities as common carriers—except in
so far as may be inconsistent with the provision of
this act or any other act applicable to such federal con-
trol or with any order of the President." This is clear-
ly a conferring by Congress upon the Director General
full power and discretion, not only as to administrative
features, but also as to litigation brought against the
Director General.

Appellee's contention that the provision of the act
authorizing the President to make, or order any car-
rier to make, any additions, betterments or road exten-
tions, on page 11 of his brief, is not applicable to this
cause, as we understand the provision. This provision
may have the effect to allow the Director General to
charge up against the Mobile & Ohio Railroad Company
the cost of putting in the side tract, but it certainly
does not authorize the Director General to charge the
Mobile & Ohio Railroad Company with the unlawful act
of destroying a farm crossing. The fact that the Di-
rector General could not charge the M. & O. Railroad
with its payment of a penalty for this unlawful act of
the Director General demonstrates that this provision
appealed to does not apply.

The argument of appellee, that if the M. & O. Rail-
road Company should pay this two hundred and fifty

dollars penalty, it would certainly be repaid by the government is not well taken, for the reason that the provision for reimbursement of the railroad was for losses incurred for additions and betterments made by the railroad company under orders of the federal control, and can by no sort of reasoning, be held to apply to a penalty incurred by the Director General, for the accounting of which the Director General himself must provide, and could not be a legitimate charge against the railroad corporation by the Director General, and could find no place in the accounting between them. It certainly cannot be held by this court as contended by appellee in his brief, that the M. & O. Railroad will be repaid this money if this judgment against it is collected. We have no right to assume that the government will repay to the M. & O. Railroad money it paid out for which the railroad was not liable.

Appellee's further contention that "Unless the judgment is collectible, section 4056 of the Code of 1906, would be nullified during the time of Federal Control," is not an argument nor a reason justifying a judgment against the M. & O. Railroad Company for this act of the Director General. The Director General has submitted to be sued for all damages plaintiff actually sustained and paid her therefor, and has not been called upon by appellee, by suit or otherwise, to say whether he will pay this penalty or not, provided for in section 4056. We can conceive that the Director General would reply to such request or suit that: "I have made you whole as to all actual damages you have sustained, but I decline as an agency of the government to be penalized by you." Yet this would not be an argument in favor of penalizing another and innocent person or corporation. Penalties are not so sacred that the fact that the party committing the act for which the penalty would be inflicted could not be sued therefor, would confer a right of action against some other person.

Appellee contends that the North Dakota case referred to in our original brief is not applicable for the reason that that part of the opinion relied upon by us is mere *dictum.* The answer is that Judge White in that opinion proceeded to demonstrate that on account of the complete possession provided for in the act of March 21, 1918, of Congress, which was so full and complete that it included every question involved in the operation of the railroads, and would have included rates, even if that right had not been conferred in express terms by the statute. It may have not been necessary for Judge White to say this in order to decide the case, yet it was a declaration of the law by the highest-judicial tribunal and shows conclusively what that court would hold with reference to all questions pertaining to federal control of the railroads. This decision of the North Dakota case and the Telephone cases of the United State supreme court demonstrates that that court holds that the railroad corporations have been completely eliminated, not only from the operation of the different railroads, but from any liability for any of the acts or doings of the federal control in the operation of said railroads.

If appellee's argument that the payment of this two hundred fifty dollars payment by the M. & O. Railroad Company is correct, then it would be doing indirectly that which could not be done directly, namely, forcing the United States Government to pay a penalty when it had not consented to be sued for penalties, and this is a sound reason why we say that the reimbursement clause referred to evidently does not apply to penalties sought to be enforced against the Director General of Railroad corporations.

We submit that the Transportation Act of 1920, approved February 28, 1920, under which the railroads were turned back to their owners, absolutely removes all the differences between the lower courts as to the proper construction of section 10 of the Act of March

21, 1918. Section 206 of this act, an exact copy of which we attach to this brief, for a convenience and ready reference by the court, shows that Congress understood that the Federal Government was in complete possession and control for all purposes of the transportation system of the United States and it further shows that the Congress understood that the Federal Government was in complete possession and control for all purposes of the transportation system of the United States, and it further shows that the Congress understood that the Federal Government was alone liable for all causes of action arising out of the possession, use or operation by the President of the railroad or system of transportation of any carrier. "This is conclusively shown by the fact that said act provides that the president shall within thirty days after the passage of said act, designate an agent against whom all actions shall be brought for causes arising out of possession, use, or operation, of railroads by the President, and so definite and positive was the Congress upon this subject that in paragraph (D) of said section 206. it is provided that in all pending suits and actions, this agent designated by the President, under paragraph (a) of said section 206, shall be substituted as defendant in the cause."

This Transportation Act clearly removes any doubt that has existed on the question of the liability of the railroad corporations for anything done under federal control, and the Act assumes liability in full by the Federal Government for all the acts and doings of Federal Control, and that all suits shall be brought against the designated agent just as all suits had been required to be against the director general, and is decisive of the case at bar.

We submit this case ought to be reversed and judgment in this court dismissing this case.

*W. C. Sweat,* for appellee.

I called the court's attention in my original brief to the fact that section 6 of the Federal Control Act provides that the President might order additional betterments, extensions, etc., and to the further fact that it was also provided in the Federal Control Act that any loss claimed by any carrier by reason of any such additional better-ments, extensions, etc., should be paid by the government, and that the appellant in this cause would have no.reason to complain for the reason that whatever might be re-covered by the appellee against the appellant on account of the statutory penalty, would be repaid by the gov-ernment, by reason of above provision of the law; and by reason of the fact that the damages in this case accrued when a betterment was being made by the order of the Director General of the appellant's road.

I now find that the contract, which was entered into between the railroad and the Director General, which was authorized by the above statute, has therein the fol-lowing provision: "The Director General shall pay, or save the company harmless from, all expenses inci-dent to, or growing out of, the possession, operation, and use of the property taken over during federal control.— He shall also pay, or save the company harmless from . . . all judgments or decrees that may be recovered or issued against, and all fines and penalties that may be imposed upon, the company by reason of any cause of action arising out of federal control, or anything done or omitted in the possession, operation, use or control of the company's property during Federal Control." U. S. R. R. Administration, Director General of Railroads, Bulletin No. 4, p. 47.

It will thus be seen that in the contract between the railroad and the Director General, acting in behalf of the President, it is fully provided that the judgment, if recovered against the appellant in this case, shall be

taken care of by the Director General, and it is provided therein that the appellant shall be saved harmless therefrom.

Is it not strange that the Director General would have entered into a contract of this character if he had not known or believed at the time that, under the provisions of the law, judgments and decrees might be rendered against the railroads, and would be rendered against them as had been done before the passage of this act? The President, acting through the Director General, evidently expected under the provisions of the law passed by Congress that judgments and decrees would be rendered against the railroads as they had been prior to that time.

Since the filing of the original brief in this cause this court had decided the case of *Alabama & Vicksburg Railroad* v. *Smith K. Journey,* the opinion having been handed down by this court on April 19th, in which it is expressly held that Congress by this law did not delegate to the executive the power attempted to be exercised by the Director General when he passed his General Order No. 18, specifying where suits should be brought. This court, in deciding that case, quoted the following from section 10 of the Federal Control Act:

"Actions at law and suits in equity may be brought by and against such carrier and judgment rendered as now provided by law; and in any action at law and suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agent of the Federal Government."

That is exactly what was done in the instant case. Under the law, we might have brought our suit for the statutory penalty and the actual damages as well against the carrier; but the Director General had invited us to bring the suit for actual damages against him, but said that we should not bring the action for penalties against him. We brought the suit for actual

damages against the Director General, and we brought the suit for penalties against the railroad. The attorney for the railroad certainly cannot complain that we only brought suit for the penalty against it and recovered a judgment for two hundred and fifty dollars, when we had the right to bring suit for both the penalty and the actual damages, and to have recovered the total judgment of five hundred dollars and we think the case should be affirmed.

HOLDEN, J., delivered the opinion of the court.

The appellee, Mrs. Love Jobe, sued and recovered judgment against the Mobile & Ohio Railroad Company for two hundred and fifty dollars penalty for failure to make and maintain a plantation crossing, as provided by section 4058, Code 1906 (Hemingway's Code, section 6686). The railroad company appeals.

This suit was instituted against the railroad company, not the Director General, after it had been taken over by the government, under act of Congress of March 21, 1918, and after General Order No. 50 was promulgated by the Director General, William G. McAdoo.

The railroad company filed a special plea to the declaration, setting up the acts of Congress authorizing the President to take possession and assume control of the railroad company; the proclamation of the President taking possession of the railroads including the appellant railroad company; the act of Congress of March 21, 1918, known as the Federal Control Act. The plea averred as a fact that the appellant railroad company's property had been continuously, from the 29th day of December, 1917, under the complete control and direction of the said Director General; that at the time of the grievance complained of in the declaration the appellant railroad company had nothing whatever to do with the management and control of the appellant rail-

road company, did not remove the plantation crossing or do any act or thing in connection with the failure to make and maintain said plantation crossing as alleged.

To this special plea the appellee interposed a demurrer upon the general ground that the plea did not state a good defense to the action, because the fact that the Mobile & Ohio Railroad was being operated by the Director General is no defense to a suit at law against it; and that General Order No. 50 issued by the Director General, which provided that suits should be brought against him, excepted suits for the recovery of fines, penalties, and forfeitures, and that this suit being. for the recovery of a state statutory penalty, is specially excepted from General Order No. 50, and is properly brought against the railroad company. The court sustained the demurrer, and, the appellant refusing to plead further, judgment was entered against the railroad company for the statutory penalty.

The Federal Control Act of March 21, 1918, provides that actions at law and suits in equity may be brought by or against such carriers and judgment rendered as now provided by law; and in any action at law or suit in equity against the carrier no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government.

General Order No. 50, of October 28, 1918, promulgated by the Director General, William G. McAdoo, reads, in part, as follows:

"Whereas, since the Director General assumed control of said systems of transportation, suits are being brought and judgments and decrees rendered against carrier corporations on matters based on causes of action arising during federal control for which the said carrier corporations are not responsible, and it is right and proper that the actions, suits, and proceedings hereinafter referred to, based on causes of action arising during or out of federal control be brought directly

against the said Director General of Railroads and not against said corporations:

"It is therefore ordered that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control, or operation of any railroad or system of transportation by the Director General of Railroads, which action suit or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties and forfeitures."

The contention of the appellant is, in substance, that the present suit cannot be maintained against the railroad company, since it was in the complete possession and control of the Director General and had nothing to do with the act that incurred the penalty; and that General Order No. 50 precluded the appellee from suing the railroad company for the state statutory penalty, but that such suit could be instituted if at all only against the Director General in control of the railroad property and its operation when the act complained of occurred; that a separate suit for actual damages for the failure to maintain the plantation crossing having also been filed against the Director General, if the Control Act gives the appellee the right to sue the railroad company in this case, then the act is unconstitutional, in that it denies the equal protection of the laws, and deprives appellant of its property without due process of law. After a careful consideration of the questions presented we have reached the conclusion that the position taken by the appellant is untenable under the law.

In our view a separate suit for actual damages against the Director General for the same cause has no material bearing upon the question of whether the suit for the penalty can be maintained against the Railroad Company instead of the Director General.

It will be observed that the Federal Control Act of March 21, 1918, provides that actions at law may be brought against such carriers and judgments rendered as now provided by law. The meaning of the act seems to be that all suits which could be brought against a railroad company before the passage of the Control Act could be brought thereafter the same as if there had been no act of Congress authorizing the taking over of the railroads by the government. This being true, we see nothing in the act that prevents the filing of the suit against the railroad company in this case.

It will be noted that General Order No. 50 by the Director General attempts to enact a rule requiring that suits shall be brought against the Director General instead of the railroads; however, this order expressly provides that it shall not apply to actions for the recovery of fines, penalties and forfeitures. We do not think General Order No. 50 can save the appellant from defeat in the position taken. In the first place, General Order No. 50 seems to be in conflict with the Federal Control Act, in that Congress plainly provided that suits might continue to be filed against the railroad company the same as before the Control Act was passed, whereas the General Order No. 50 requires that certain suits shall not be filed against the railroad, but must be brought against him. There being a conflict between the act and the order, one must give way to the other, and we do not hesitate to hold that the act of Congress must prevail over the official order of the Director General. *Franke* v. *C. & N. W. R. R. Co.* (Wis.), 173 N. W. 702; *Benjamin Moore & Co.* v. *A., T. & S. F. R. R. Co.* (Sup.), 174 N. Y. Supp. 63; *McGregor* v.

*Great Northern Ry. Co.* (N. D.), 172 N. W. 841, 4 A. L. R. 1635.

However, if it be conceded that General Order No. 50 of the Director General is valid and controlling, still it availeth nothing for the appellant, because the order itself expressly excepts all suits for the recovery of fines, penalties, and forfeitures. The recovery here is for a state statutory penalty, and is therefore within the exception named in the order.

It is interesting to note, further, that the General Order No. 50 impliedly, if not expressly, provides that the suit here for a penalty could not be brought against the Director General, as he particularly excepted this character of suit in the order. Now, if the penalty could not be recovered against the Director General, as he provides that it cannot be in his order, and the appellee could not maintain this suit against the railroad for the penalty because the railroad had been taken over by the Director General, the appellee would be left without a remedy for the penalty for the injury inflicted. It was not contemplated or intended by Congress or the Director General that any such situation should arise.

We decline to hold that the Federal Control Act of Congress is unconstitutional. It does not deny the equal protection of the laws, nor take property without due process. The appellant Railroad Company appeared and contested the suit. The Federal Government through its representative, the Director General, is liable to appellant, and will doubtless reimburse the appellant against the amount of the recovery here, which was caused by the acts of the Director General in full control of the railroad property at the time of the injury complained of.

The judgment of the lower court holding that the suit was properly filed against the railroad company is correct, and is affirmed.

*Affirmed.*

Sykes, J. (concurring specially).

I concur in the decision of this case for the reason that General Order No. 50, providing for suits to be brought against the Director General, expressly excepts from its provision suits for the recovery of fines, penalties, and forfeitures. This is a suit for the recovery of a penalty, and under this order does not have to be brought against the Director General of Railroads. I express no opinion upon the question of whether or not General Order No. 50 is in conflict with the Federal Control Act and therefore void.

The Chief Justice joins me in this concurring opinion.