## Mitchell, By, &c. v. Cumberland Telephone & Telegraph Company, et al.

(Decided May 21, 1920.)

### Appeal from Henry Circuit Court.

1. Telegraphs and Telephones—Governmental Operation—Action for Negligence.—Where the President of the United States, acting under joint resolution of Congress of July 16, 1918, has taken control of the lines of a telephone company, through the Postmaster General as operating agent of the government, and the government is operating the property under such assumption of control, being responsible for the expenses of operation and entitled to the income therefrom, no suit can be maintained against the company for any alleged negligence of any of the employees engaged in its operation. Such a suit does not come within the jurisdiction of the proviso to such resolution preserving the rights of the states in the exercise of their police regulation, since the negligence complained of is not a matter of police regulation of the states, or at any rate not that character of police regulation contemplated by the proviso.

2. Telegraphs and Telephones—Federal Control—Action for Negligence.—The fact that the United States government did not give its consent to be sued in such case, and that the complaining party might be remediless can not have the effect to preserve to the plaintiff his right of action against the owner of the property, since a recovery in such case would be taking its property without due process of law.

CHARLES CARROLL, TURNER & TURNER and EDWARDS, OGDEN & PEAK for appellants.

W. B. MOODY and TRABUE, DOOLAN, HELM & HELM for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and plaintiff below, Parker Mitchell, an infant, by his statutory guardian, filed this suit in the

court below against appellee and defendant, Cumberland Telephone & Telegraph Company, seeking to recover from defendant the sum of $15,0000.00, for personal injuries which plaintiff sustained while in the employ of the defendant, and which he claims were produced by the negligence of the defendant, its agents and servants superior to him. By an amended petition it was alleged that the American Telephone & Telegraph Company claimed to own, control, or have some interest in the property of the defendant and its operation, and it was made a defendant.

The injury sued for was received by plaintiff while assisting in unloading some telephone poles from a car, when one of them through the negligence of other servants superior to plaintiff, as alleged, was made to strike him upon the chin, loosening some of his teeth, and producing other injuries, resulting in physical and mental pain, to recover for which the suit was brought.

Separate answers were filed by each defendant, in which the first paragraphs denied the affirmative allegations of the petition. The second paragraphs averred that on July 16, 1918, the Congress of the United States passed a resolution authorizing the President to take possession and assume control of the telegraph and telephone lines and systems in the United States, and to operate them ''in such manner as may be needful or desirable for the duration of the war;'' that under the authority thereby conferred, the President of the United States, on July 22, 1918, issued his proclamation taking over all such lines and systems to the extent of the authority conferred by that resolution, as of August 1, 1918, and designated Albert S. Burleson, Postmaster General of the United States, as the person representing the government, to exercise the management and control of such systems, pursuant to the authority conferred by the resolution of Congress; that the Postmaster General, on August 1, 1918, pursuant to an order theretofore issued by him, assumed full and complete control and management of all telephone systems of the United States, including that of the defendants, where the accident complained of happened, and that he, on December 13, 1918, appointed and named an operating board for such systems in the United States, which board took charge, pursuant to such authority, on December 23, 1918, and was in full control and operation of the defendants' lines at the place and time of the accident com-

plained of; that by reason of such facts neither of the defendants was in control, operation or management of their physical properties at the time and place complained of, but that such control, management and operation were exclusively in the hands of the United States government, through the agencies designated, and that neither in the resolution under which said properties were taken over by the government nor by any subsequent act or resolution was there any consent given for it or any of its agents to be sued, and none such could be maintained, nor could defendants be held liable, because the possession and management of their property had been taken from them without their consent, and to hold them liable under the circumstances would be taking of their property without due process of law, contrary to the Constitution of the United States.

Demurrers were filed to the second paragraphs of the answers, and they were each overruled, and plaintiff declining to plead further, his petition was dismissed, and complaining of that judgment, he prosecutes this appeal.

In the order of the Postmaster General assuming control over such lines it was stated that "all officers, operators and employees of the telegraph and telephone companies will continue in the performance of their present duties, reporting to the same officers as heretofore, and on the same terms of employment." It is therefore insisted by appellees, and does not seem to be controverted by appellant, that such officers and employees from that time forward became servants of the United States in the operation of such properties, and ceased to be servants of their former employers.

The railroad transportation lines had previously been taken over by the government, through an act of Congress of August 29, 1916, section 10 of which expressly reserved the right in persons aggrieved to continue to sue the carrier corporation, both in law and in equity, and provided that it would be incompetent in defense of any such suit to rely upon the fact that the carrier at the time was an instrumentality or agency of the Federal Government. Some courts held that provision of the act taking over the railroads unconstitutional, and on March 21, 1918, it was amended by the government giving its consent for suits to be filed against its director general, who was its representative in carrying out the provision of the act. While the railroads were under the control

of and operated by the government pursuant to the provisions of the act of Congress of August 29, 1916, numbers of decisions, both state and federal, were rendered, holding that the individual carriers could not be held liable for the acts of the servants engaged in their operation and especially so if the government itself was not liable, or if it could not, under the terms of its taking possession, be made to respond to the carriers for any amount which they might be made to pay by virtue of suits filed against them. But we do not deem it necessary to cite or refer to those cases, since with only one exception (and that an inferior court) it has been held by all the courts before which the question has arisen that telephone and telegraph companies are not responsible, nor can they be sued for any act of the government, or any of its agents and servants while operating the properties since the time of taking over of the lines under the resolution of Congress of July 16, 1918.

In the case of Dakota Central Telephone Company v. State of South Dakota, 250 U. S. 163, decided June 2, 1919, the Supreme Court of the United States, speaking through the chief justice, held that the Congress of the United States had the power and authority to pass as a war measure the resolution of July 16, 1918, and that the possession and control of the government thereunder was complete and exclusive, and that it could be exercised as long as a state of war existed, which would be until a treaty of peace was duly executed. In that case the authorities of the state of South Dakota sought to enjoin the telephone companies from putting into effect a schedule of intrastate rates which had been prepared and authorized by the Postmaster General, but which were in excess of those previously fixed by the state authorities, and it was held that the suit could not be maintained because the power of the state to regulate such intrastate rates was suspended during the exclusive operation of the telephone systems under the power conferred by the resolution of Congress, and in the operation of which the government had the right to and did appropriate the revenues derived from such operation. It was also held that the right to maintain the suit was not conferred by the proviso to the resolution of Congress, which proviso says:

"That nothing in this act shall be construed to amend, repeal, impair, or affect existing laws or powers

of the states in relation to taxation or the lawful police regulations of the several states, except wherein such laws, powers, or regulations may affect the transmission of government communications, or the issue of stocks and bonds by such system or systems.''

The court held that by the use of the phrase ''police regulations of the several states,'' in the proviso, it was not intended to embrace within the definition of the term its most comprehensive meaning covering the whole field of state authority, but it was meant by Congress to be used in its narrower sense of including the power of the state to deal with ''the health, safety, and morals of the people.'' .The case is also reported in 4 A. L. R. 1623.

The same questions were similarly disposed of by the Supreme Court in the cases of Burleson v. Dempcy, 250 U. S. 191; Commercial Cable Company v. Burleson, Idem. 360; State of Kansas v. Burleson, Idem. 188, and Macleod v. New England Telephone & Telegraph Company, Idem. 195.

A similar case was before the Supreme Judicial Court of Massachusetts, in the case of Public Service Commission v. New England Telephone & Telegraph Company, 122 N. E. R. 567, and a like conclusion to that announced by the Supreme Court was reached. This construction was also adopted by the Supreme Court of Wisconsin in the case of State of Wisconsin v. Wisconsin Telephone Co., 172 N. W. R. 225.

The Supreme Court of Mississippi, in the case of State v. Cumberland Telephone & Telegraph Company, 81 So. R. 404, made a different ruling, but the opinion in that case was withdrawn after the rendition of the opinion by the Supreme Court in the Dakota case, *supra,* and the opinion in the Mississippi case was made to conform to that in the Dakota case. See 82 So. R. 311.

The Supreme Court of the State of Alabama reached the same conclusion in the case of State v. Burleson, 82 So. R. 458; so that every court before which the question has been presented has held that even in the question of intrastate rates the authority of the Postmaster General as the government's agent in the management of the telephone lines superseded that of the state.

In the Arkansas case of Western Union Telegraph Company v. Davis, 218 S. W. R. 833, the plaintiff sought judgment against the telegraph company for negligent failure to transmit and deliver a telegram. Similar defense was made to that suit as is made in this case, and

the court held it good, saying: "We see no escape from the conclusion that there is no liability in this case for the injury complained of."

In the Missouri case of Foster v. Western Union Telegraph Company, 219 S. W. R. 107, which was brought to recover damages for the negligent transmission and delivery of a telegram, the court, in denying liability, said:

"In the next place no suit could possibly be instituted against the Western Union Telegraph Company, because it has been expressly held by the highest authority that when the President, acting under the power given him by Congress, took charge of the telegraph lines of the United States, such lines were then operated as a government agency." The court then cited the cases above referred to from the Supreme Court of the United States, and others.

The Texas Civil Court of Appeals, in the case of Western Union Telegraph Company v. Wallace, decided February 10, 1920, and not yet reported, denied liability for negligence in the handling of a telegram, and followed the cases last referred to, as did also the Supreme Court of Alabama in the case of Roschel Canidate v. Western Union Telegraph Company, 83 Southern —, decided January 15, 1920, and not yet reported.

Judge Evans, of the United States District Court, for the Western District of Kentucky, made a similar ruling in the case of Amerson v. Western Union Telegraph Company, decided March 23, 1920, and not yet reported.

We can discover no difference between negligence in the handling or delivery of a telegram or telephone message by the employees in the operation of the properties of such companies, and their negligence in any other branch of operation, so as to make the one come within the purview of "police regulations of the several states," and not the other. To our minds there exists no reason for distinguishing between the public policy of a state, which finds its expression in police regulations, in the one case any more than in the other. Besides, it might be extremely doubtful whether the right to bring a suit for negligence is one of police regulation. As a matter of fact such right, in so far as it affects personal injuries, is not a statutory one in this state, but has its foundation in the common law from time immemorial.

As said in the cases, *supra,* if suits of this kind could be maintained under the circumstances, then indeed could property be taken without *any* process of law, since the only pretended claim to it would be that the defendant owned the property which was being operated at the time of the happening of the injury sued for, although it was then entirely out of his control and was taken without his consent. The fact that the plaintiff might be remediless because there is no provision for any suit against the United States (although regretable) can not strengthen his case. Numerous instances exist in this state where there is no remedy furnished for similar injuries. No county can be sued for negligence in the maintenance of its public roads; nor can a municipality, however negligent, be made to respond in damages for injuries inflicted while exercising a governmental function. In neither of those cases are there as potent reasons for withholding liability as exist in this case.

The case of Witherspoon & Sons v. Postal Telegraph & Cable Company, 257 Fed. Rep. 758 (decided by the United States District Court for the Eastern District of Louisiana), relied on by appellant, is the only one announcing a contrary view, and it is expressly discarded by some of the cases, *supra,* and was decided before the opinion of the Supreme Court was rendered in the Dakota case. We do not, therefore, regard it as authority.

From the foregoing authorities there seems to be no alternative but to affirm the judgment, which is accordingly done.