## Commonwealth v. Louisville & Nashville Railroad Company.

(Decided October 15, 1920.)

### Appeal from Ohio Circuit Court.

1. Railroads—Accommodations for Passengers—Federal Control.— A railroad company whose property is under federal control and is being operated by the Director General of Railroads, is not subject to indictment for an alleged violation of the Kentucky Statutes relating to the maintenance of waiting rooms at one of its depots.

2. Railroads—Federal Control—Effect of.—The effect of Federal control was to divest the railroad companies of the possession of their property and to place its entire custody and control and the operation and maintenance thereof in the Federal government through its Director General of Railroads.

3. Railroads—Federal Control.—The Federal Control Act contemplated one control, one administration, one power for the accomplishment of the one purpose, viz.: the complete possession by governmental authority to replace for, the period provided the private ownership theretofore existing.

4. Railroads—Federal Control.—The reference in section 10 of the Federal Control Act "to such carriers" refers to the carrier while under Federal control. The carrier who is subject to suit is the agent of the government who is operating the railroad.

5. Railroads—Federal Control.—From and after the taking over of the railroads by the President the former owners ceased their functions and obligations as carriers; the carriage was thereafter controlled by the Director General. Persons who had been offi-

cers and employes of the owning companies ceased to be such and became agents and employes of the Director General.

CHARLES I. DAWSON, Attorney General, THOMAS B. Mc-GREGOR, Assistant Attorney General, and C. E. SMITH for appellant.

BENJAMIN D. WARFIELD and THOMAS E. SANDIDGE for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

Is a railroad company whose property is under federal control and while so operated subject to indictment for an alleged violation of the Kentucky Statutes relating to the maintenance of waiting rooms? This, the question for our decision, must be answered in the negative.

The present appeal is from a judgment sustaining a demurrer to an indictment charging appellee with the violation of section 772, Kentucky Statutes, in regard to the proper maintenance of a convenient and suitable waiting room at its depot in Centertown, Ky. The demurrer was sustained:

1. Because the indictment was bad for duplicity, in that it charged offenses under sections 772 and 784 of the statutes. This defense, however, has been disposed of by the decision in I. C. R. R. Co. v. Commonwealth, 179 Ky. 28, 200 S. W. 17, where an objection to an indictment, couched in practically the identical language as the one under consideration, was held to be without merit.

2. Because at the time of the alleged acts charged in the indictment appellee was not operating its line of railroad, same having passed under federal control at a date prior to the commission of the acts complained of.

Pursuant to the power invested in him by congress in certain resolutions and statutes passed in August, 1916, the President on December 26, 1917, proclaimed that on December 28, 1917, he would take possession and assume control of each and every system of transportation in the United States. This included all equipment and appurtenances used in the operation of the lines. Effective on said last named date the railroads of this country passed into the possession and under the control and operation of the director general of railroads, who was appointed by the proclamation aforesaid. On March 21, 1918, congress passed what is commonly known as the federal control act, which, among other things, authorized the President to agree upon a just compensation with the owners of railroads while the roads were under federal control.

It is conceded by the Commonwealth that if the court's decision on this second proposition is a correct exposition of the law the indictment is not good and cannot be made so. But it is contended that the acts of congress do not apply to violations of the penal laws. The director general of railroads on October 28, promulgated what is known as general order No. 50, providing in part as follows:

"It is therefore ordered, that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the director general of railroads, claims for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control, or operation of any railroad or system of transportation by the director general of railroads, which action, suit or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, director general of railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures."

The constitutionality of this order has been attacked in a number of cases, and different courts have expressed contrary views in regard thereto, but we do not find it necessary in the present case to pass upon this question.

In section 10 of the act of March 21, 1918 (U. S. Comp. Stat. 1918, sec. 3115¾j), it is provided in part, as follows:

"Carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws, or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law."

Section 12 of the act (U. S. Comp. Stats. 1918, sec. 3115¾l) among other things, provides that "moneys and other property derived from the operation of the carriers during federal control are hereby declared to be the property of the United States."

In Northern Pacific Ry. Co., et al. v. State of North Dakota, ex rel, etc., 250 U. S. 135, it was held that under the federal control act the railroads were in the full possession and control of the federal government and

through the President and the interstate commerce commission that government was empowered to fix rates on intrastate traffic, superseding the state power over that subject, and that the federal control act was conclusive and complete as to the government ownership and control of the railroads and the operation thereof. As said by the Supreme Court in the case, *supra,* the act contemplated one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing.

A similar conclusion as to the effect of governmental control has been reached in many suits for personal injuries, among others the following: Rutherford v. Union Pac. R. R. Co., 254 Fed. 880; Dahn v. McAdoo, Director General, etc., 256 Fed. 549; Mardis v. Hines, Director General, etc., 258 Fed. 945; Nash v. Southern Pac. R. R. Co., 260 Fed. 211; Erie R. R. Co. v. Caldwell, 264 Fed. 949; Blevins v. Hines, Director General, etc., 264 Fed. 1005; Castle v. Southern Ry. Co. (S. C.) 99 S. E. 846. In this same connection see McGregor's Admr. v. Great Northern Ry. Co. (N. D.) 172 N. W. 841, and especially the annotation in 4 A. L. R. 1635; 1680.

In Mobile & Ohio Ry. Co. v. Jobe (Miss.), 84 So. 910, the court held that general order No. 50 was in conflict with the federal control act and the latter must prevail. However, the validity or invalidity of said order is not involved here, since in neither event could appellee be indicted for an offense that was not and in the nature of things could not have been committed by it, as the government and not appellee was operating the railroad at the time. Furthermore said decision is not in harmony with the views expressed by this court in Mitchell v. Cumberland Tele. & Tel. Co., 188 Ky. 263, 221 S. W. 547. There appellant was denied the right to maintain an action against the telephone company, because congress, in the resolutions under which the telephone lines were passed to the control of the postmaster general, failed to provide a means by which said suit could be maintained. We take the following excerpt from the opinion of the court:

"As said in the cases, *supra,* if suits of this kind could be maintained under the circumstances, then indeed could property be taken without *any* process of law, since the only pretended claim to it would be that the defendant owned the property which was being operated at the time of the happening of the injury sued for, although it was then entirely out of his control and was taken without

his consent. The fact that the plaintiff might be remediless because there is no provision for any suit against the United States (although regrettable) can not strengthen his case.''

We are clearly of the opinion that appellee can not be held under the indictment because the acts charged arose out of transactions over which it had nothing whatsoever to do, and over which it had no control. In this connection it is well to call attention to the fact that section 772 of the Kentucky Statutes is directed to the one operating a railroad, and it is not and cannot be maintained that at the time of the acts complained of in the present proceeding appellee had any management or control whatsoever over the operation of its railroad nor of any of its depots or other equipment or appurtenances incident to or necessary in the operation of same.

The reference in section 10 of the federal control act, *supra,* ''to such carriers'' is to the carrier while under federal control because, as said in Rutherford v. Union Pacific Ry Co., *supra*:

''It would have been an anomaly to have given the actual control of the railroads to the director general and to have provided that suits arising out of his acts should be brought against the corporation who had been divested of authority over those acts.''

This is made plain by this further provision of section 10:

''And in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government.''

It necessarily means that the carrier who is subject to suit is the agent of the government who is operating the railroad, since the corporation or persons who had lost or surrendered control or possession of the railroad would have no occasion to assert the defense that they were instrumentalities or agents of the government as to acts which occurred after their control had terminated. The language of section 10, *supra,* created liability on the part of the United States for every act and omission for which liability had formerly attached to the owners in their position as common carriers.

''The power of control,'' says the court in Brady v. Chicago & Great Western R. R. Co., 114 Fed. 100, 52 C. C. A. 55, 57 L. R. A. 712, ''is the test of liability, under the maxim, *respondeat superior*. If the master cannot command 'the alleged servant

then the acts of the latter are not his, and he is not responsible for them. If the principal cannot control and direct the alleged agent, then he is not his agent, and the principal is not liable for his acts or his omissions. In such case the maxim, *respondeat superior,* has no application, because there is no superior to respond. In an action against an alleged master or principal for the act of his alleged servant or agent under the maxim, *respondeat superior,* there can be no recovery in the absence of the right and power in the former to command or direct the latter in the performance of the act charged, because in such a case there is no superior to answer.''

From and after the taking of possession of the railroads by the President, the corporations or persons who had previously controlled them ceased their functions and obligations as carriers; the carriage was thereafter conducted by the director general. Though retaining their positions and details of operation, the acts of the former officials and employes were the acts, not of the railroads but of the director general. The persons who had been officers and employes of the owning companies ceased in general to be such and became agents and employes of the director general. Service of process upon them no longer bound their former employers.

Since, therefore, appellee was not operating its line of railroad at the time referred to in the indictment and had no control or management in its operation, the exclusive and complete control thereof having been taken over by the federal government, it could not be held liable for an alleged violation of the statutes referred to and the court properly sustained the demurrer to the indictment.

The judgment is affirmed.