## CHICAGO, R. I. & P. RY. CO. v. GOLD-SMITH.

No. 12455—Opinion Filed Nov. 13, 1923.

1. **Evidence — Judicial Notice — Federal Control of Railroads.**

The courts of this country may take judicial knowledge that the lines of transportation in the United States, including the defendant's line of railroad, on which plaintiff claims to have sustained loss and injury, were taken over by the federal government, and operated by federal agency from 12 m., December 28, 1917, until 12:01 a. m., March 1, 1920.

2. **Railroads — Nonliability of Owners During Federal Control.**

The owners of transportation lines are in no wise liable on causes of action growing out of the control and operation of such lines by the federal government between 12 m., December 28, 1917, and 12:01 a. m., March 1, 1920.

3. **Same — Actions Filed Afterward — Federal Agent as Defendant.**

Where suits are brought on causes of action growing out of federal control and operation of the transportation lines in the United States, after the transportation lines were returned to the corporation owners, the same should be brought and prosecuted against the Federal Agent provided in the Transportation Act of 1920, and appointed by the President of the United States.

4. **Same — Action Against Railroad not Maintainable.**

Where suit is brought against the Chicago, Rock Island & Pacific Railway Company for loss occasioned on one of its lines of railroad, and the allegations are that the loss or injury occurred in the year 1919, and the proof offered on the part of the plaintiff tends to show that the loss or injury occurred in the year 1919, the same is insufficient to establish a right to recover as against said corporation; and does not require the submission of the same to the jury; and a demurrer to plaintiff's evidence, or motion for a directed verdict for defendant, should be sustained; and where the trial court overrules such demurrer, or refuses to direct a verdict for the defendant, the same constitutes reversible error.

5. **Same — Reversal.**

Record examined, and held, that plaintiff's evidence tended to show loss and injury occurring upon one of the defendant's lines of railroad in the year 1919, and that such evidence did not tend to establish a cause of action against the defendant; and that the judgment of the trial court, for plaintiff, must be reversed.

6. **Same — Dismissal of Petition.**

Record examined, and held, that, under the allegations of the petition and the proof adduced upon the trial, there is no theory on which the plaintiff is entitled to recover against the Chicago, Rock Island & Pacific Railway Company; and that plaintiff's petition should be dismissed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Grant County; J. W. Bird, Judge.

Action by A. E. Goldsmith against the Chicago, Rock Island & Pacific Railway Company, a corporation, to recover damages for breach of a live stock shipping contract

alleged to have been made with the Chicago, Rock Island & Pacific Railway Company, on about the 24th of November, 1919, to carry live stock from Pond Creek, Okla., to Fort Worth, Texas. Judgment for plaintiff, and defendant appeals. Reversed, with directions.

C. O. Blake, W. F. Collins, W. R. Bleakmore, A. T. Boys, and Raymond A. Tolbert, for plaintiff in error.

Sam P. Ridings, for defendant in error.

Opinion by SHACKELFORD, C. The parties will be referred to as plaintiff and defendant as they appeared in the trial court.

The plaintiff filed this action in the district court of Grant county, on the 25th of October, 1920, alleging that on the 24th of November, 1919, he entered into a livestock shipping contract with the defendant, by which plaintiff was to ship and the defendant receive and carry, as a common carrier, a certain carload of mules, from Pond Creek, Okla., to Fort Worth, Tex.; and that under such contract he delivered and defendant received one certain mule of the value of $325, which defendant failed to deliver, or in any manner account for; and by reason of which the plaintiff was damaged in the sum of $325, and prays judgment for damages in said sum. On November 24, 1920, the defendant answered under oath, admitting its corporate existence, and denying generally the other allegations of the petition, and expressly denying that it had entered into the shipping contract with the plaintiff, as alleged, and further denying that pursuant to any such shipping contract plaintiff delivered and the defendant accepted for shipment the carload of mules, including the mule for the value of which plaintiff brought suit.

The cause was tried to a jury on the 27th of January, 1921, resulting in a verdict and judgment for plaintiff in the sum of $250, and defendant prosecutes this appeal.

The defendant makes three specifications of error, which it presents in its brief as follows:

(1) The court erred in refusing to sustain defendant's demurrer to the evidence.

(2) The court erred in refusing to give defendant's requested instruction No. 1.

(3) The court erred in overruling defendant's motion for a new trial.

Upon the trial of the cause, the evidence on the part of the plaintiff tended to show that one C. E. Foster was looking after the shipment of mules for the plaintiff some time in November, 1919. Mr. Foster testified that he signed the plaintiff's name to the bill of lading by authority from the plaintiff. That 23 head of mules were placed in the shipment loaded into the car on the defendant's railroad line at Pond Creek, Okla., for shipment to Fort Worth, Tex. That among others was a mule bought by witness Foster and described as a red mule of the value of $325. That upon delivery at Fort Worth there was 22 mules delivered, and the one not delivered was the red mule. That the red mule was probably killed at Waurika in transit, and taken out of the car there. That the red mule belonged to witness Foster, and that he helped load the mules, including the red mule, on the car at Pond Creek. That a claim was filed for the loss, in December, 1919. Plaintiff introduced as exhibit "A," a copy of the livestock shipping contract under which the shipment was made. It is in substance as follows:

"Under States Railroad Administration.
"Director General of Railroads

"Chicago, Rock Island & Pacific Railroad.
"Live Stock Contract.

"Executed in triplicate at Pond Creek, Okla., Station, Nov. 24, 1919. This contract, Made between Director General of Railroads, operating Chicago, Rock Island & Pacific Railroad _____ first party, and A. E. Goldsmith _____ second party. _____"
—and contracts:

"That the said first party will transport for second party the live stock described herein. One car, said to contain mules, from Pond Creek, Okla. Station, to Fort Worth, Tex."

It carries the usual shipping provisions, and is signed "Director General of Railroads, by M. H. Dusch. Agent, Chicago, Rock Island & Pacific Railroad," and "A. E. Goldsmith, owner and shipper."

At the close of the plaintiff's evidence, the defendant demurred thereto, as follows:

"Now comes the defendant, at the close of the plaintiff's evidence, and demurs thereto for the reason that the same is insufficient to constitute a cause of action in favor of the plaintiff and against the defendant."

This demurrer was by the court overruled, and exceptions allowed.

Upon the announcement of rest by both parties, the defendant requested the court to direct a verdict as follows:

"Gentlemen of the jury, you are instructed that in this case the court will take judicial notice of the fact that on the 28th day of December, 1917, by executive procla-

mation, the President of the United States, in time of war, for said United States of America, took over, by authority of law, the exclusive possession, use, and operation of the railroad and system of transportation, and all lines and parts thereof, of and belonging to and then being possessed, used and operated by the defendant the Chicago, Rock Island & Pacific Railway Company, a corporation, together with other railroads and systems of transportation of the United States of America, and continuously and exclusively possessed, used and operated the same by and through a Director General of Railroads and his agents servants and employes, until the first day of March, 1920, when said possession, use, and operation thereof was relinquished and said railroad and the possession, use, management and operation of the same were restored to its said owner, the said, the Chicago, Rock Island & Pacific Railway Company, a corporation, the defendant herein: and in this connection you are instructed that it is undisputed that plaintiff shipped said animals and the same were carried over said railroad in November, 1919, during said period of federal control, at a time when said railroad was being exclusively possessed, used, managed and operated by this defendant, and that plaintiff has no cause of action for said injury and damage, if any, against the defendant herein, and you are instructed to return a verdict in favor of the defendant and against the plaintiff herein."

This request was denied and exception allowed.

The ruling of the trial court upon the defendant's demurrer and upon the request for a directed verdict was erroneous. The plaintiff sought to recover damages for failure to deliver a certain mule alleged to have been shipped under a contract made between the plaintiff. A. E. Goldsmith, and the defendant company. Plaintiff's exhibit "A," being the shipping contract relied upon by the plaintiff, tended to prove that the contract for shipment was made with the Director General of Railroads. The defendant denied under oath that the shipping contract had been entered into with it, and denied that the stock had been delivered to or carried by it. The burden was upon the plaintiff to prove a delivery of the property to the defendant. There was an utter failure to show that the shipping contract was made with the defendant, or that the livestock was delivered to the defendant for shipment. The proof on the part of the plaintiff, instead of tending to show that the livestock was delivered to defendant, tended to show that the livestock was delivered to the Director General of Railroads. Until some proof was offered tending to show that the mule which was de-

stroyed was delivered to defendant, so recovery could be had as against it.

This court takes judicial knowledge of the act of Congress of August 29, 1916, empowering the President of the United States to take over the systems of transportation throughout the nation, and, further, that on the 26th day of December, 1917, the President issued his proclamation taking over all systems of transportation operating in the United States, including the defendant's line of railroad, over which the plaintiff shipped the load of mules, from and after 12 o'clock noon on the 28th of December, 1917; that federal control of the railroads and systems of transportation, including the line over which this shipment was made, was continued under the act of Congress of March 21, 1918, until Congress should terminate federal control; that it was provided by the Transportation Act of 1920 that federal control should terminate at 12:01 a. m., on March 1, 1920, at which time the carrier systems, including the line of railroad over which plaintiff shipped his carload of mules, should be turned back to the owners. Thus we find the transportation companies, including the defendant, were entirely out of control of their properties from 12 m., on the 28th of December, 1917, until 12:01 a. m., on March 1, 1920. Plaintiff's cause of atcion arose in 1919, and while the federal government had possession and control of the operation of defendant's line of railroad, including that part over which the shipment was made, according to the allegations of the petition. The suit was filed after the termination of federal control, but the proof tended to show that the contract of shipment was made with the Director General of Railroads, and that the shipment was made during federal control.

In Mo. Pac. Ry. Co. v. Ault, 256 U. S. 554, the Supreme Court of the United States laid down the rule as to the liability of the carrier corporation in this language:

"A railroad corporation is not liable, either at common law or under paragraph 10 of the Federal Control Act upon a cause of action arising out of the operation of its railroad by the government through the Director General of Railroads."

Other cases of like effect are: Commonwealth of Kentucky v. L. & B. Ry. Co. (Ky.) 224 S. W. 847; Nash v. So. Pac. Ry. Co., 260 Fed. 280; Mardis v. Hines, Director General, 258 Fed. 945; Egan v. C., B. & Q. Ry. Co. (Neb.) 191 N. W. 708; L. & N. Ry. Co. v. Fields (Ky.) 246 S. W. 130.

At the time of the loss complained of, the federal government was in complete

possession and in control of the operations of the line of railroad, over which the plaintiff shipped the carload of mules, and had the suit been filed before the line of railroad was turned back to the defendant company, there is no question but that it should have been brought against the Director General of Railroads. Under the Federal Control Act, followed by the promulgation of general order No. 50, it could not be maintained against the carrier corporation, the defendant here. The Transportation Act, which became effective on February 28, 1920, had the effect of releasing the Director General of Railroads as the governmental agency, and of returning the railroads, including the line over which plaintiff made his shipment, to the owners, from and after 12:01 a. m., March 1, 1920. But, upon releasing control of the transportation lines, the government recognized that the carrier corporation would not be liable on causes of action arising out of federal control, just as was held in Mo. Pac. Ry. Co. v. Ault, supra. The Congress of the United States recognized the justice of providing a means for disposing of causes of action arising out of federal control and operation; and in the said transportation act provided that such causes of action might be litigated against the government through an agent to be appointed by the President. In the Transportation Act it is provided:

"Sec. 206 (a). Actions at law, suits in equity and proceedings in admiralty, based on causes of action arising out of the possession, use or operation by the President of the railroads or systems of transportation of any carrier (under the provisions of the Federal Control Act, or of the act of August 29, 1916) of such character as prior to federal control could have been brought against such carrier, may, after the termination of federal control be brought against an agent designated by the President for such purpose, which agent shall be designated by the President within thirty days after the passage of this act. Such actions, suits, or proceedings may, within the periods of limitations now prescribed by the state or federal statutes but not later than two years from the date of the passage of this act, be brought in any court which but for federal control would have had jurisdiction of the cause of action had it arisen against such carrier."

It will be observed that this section of the act provided that suits arising out of the control and operation of the transportation lines while under governmental control "may, after the termination of federal control, be brought against an agent designated by the President for such purpose." It further provided that such agent should be named by the President within

30 days after the passage of the act. It is a matter of common knowledge that the President did name an individual as the agent of the government against whom suits should be brought and prosecuted on causes of action arising out of federal control. In Cobb v. Payne, Agent (Tex. Civ. App.) 240 S. W. 610, it was held that:

"The court may take judicial notice of President's proclamation of March 11, 1920, appointing the Director General of Railroads as the agent provided for in Act Cong. Feb. 28, 1920, against whom actions should be brought, and May 14, 1920, appointing his successors."

After the Federal Control Act and the promulgation of general order No. 50, suits arising out of the possession and operation of the federal government were to be brought against the Director General until the President of the United States should name an agent against whom such actions might be brought and prosecuted as provided in the Transportation Act of 1920.

The plaintiff's cause of action having arisen out of the possession, control, and operation of defendant's line of railroad by the government, and the contract of shipment having been made with the Director General of Railroads, the defendant company was not liable for plaintiff's claim, and the suit, having been brought after the line of railroad had been turned back to defendant company, and after the President of the United States had named an agent of the government against whom such actions might be brought and prosecuted under the provisions of the Transportation Act of 1920, should have been brought and prosecuted against the agent named by the President. Since plaintiff did not so bring the action, but brought it against the corporation owner, and the evidence tended to show that the shipping contract was made with the Director General of Railroads, and that the loss occurred while the line was under federal control, such evidence did not tend to prove cause of action against defendant corporation, and the trial court should have directed a verdict for the defendant; and his failure to do so constituted reversible error.

There are some other questions raised by the defendant which we find it not necessary to decide.

We recommend that the judgment of the trial court be reversed, with directions to dismiss the action as to the defendant, Chicago, Rock Island & Pacific Railway Company.

By the Court: It is so ordered.