William J. SKINNER and Earl D. Scott, Appellants,

v.

Matthew PACAK, Appellee.

Patent Appeal No. 8573.

United States Court of Customs and Patent Appeals.

Jan. 13, 1972.

Marmaduke A. Hobbs, South Bend, Ind., attorney of record, for appellants; T. Hayward Brown, Washington, D. C., Vito J. DiPietro, Reston, Va., of counsel.

J. Herman Yount, Jr., Thomas L. Tarolli, Cleveland, Ohio (Yount & Tarolli), Cleveland, Ohio, attorneys of record, for appellee; Robert J. McCloskey, Cleveland, Ohio, of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

WORLEY, Chief Judge.

Skinner and Scott (hereafter Skinner) appeal from the decision of the Board of Patent Interferences awarding priority

of a single count in interference No. 95,750 to Pacak. The count originated as claim 9 in Skinner patent No. 3,225,425[1] and was copied in Pacak application serial No. 538,853.[2] That application was held entitled, through an intervening application, to the benefit of the November 23, 1959, filing date of application serial No. 854,957, which matured into Pacak patent No. 3,087,531, dated April 30, 1963.

No priority testimony was taken, the sole issue being whether the subject matter of the count is supported by Pacak serial No. 854,957 and the later Pacak applications.

The count reads:

4. In a method of forming sheaves, pulleys and similar grooved articles: the steps comprising forming a metal disc-shaped blank, rotating said blank, initially slitting said blank at its peripheral edge to form a peripheral groove and two angularly extending flanges, progressively pressing said flanges laterally, and expanding said groove while progressively slitting the blank.

Referring, as did the board, to serial No. 854,957 to exemplify Pacak's disclosure,[3] Figures 7, 8, 9 and 10 are reproduced:

FIG. 7

FIG. 8

FIG. 9

FIG. 10

[A4803]

The drawings show a circular blank of metal 13, having a cup-shaped hub 20, clamped between workholder means 35 and 36 of a machine adapted to rotate

1. Issued December 28, 1965 on application serial No. 250,629, filed January 10, 1963.

2. Filed March 30, 1966.

3. For present purposes, there is no significant difference in the three Pacak applications.

the blank about its axis. A first tool, constituting a "splitting roller" 10 (shown partially, in cross section, in Fig. 10) mounted for rotation about its axis, is initially moved to a position where its peripheral edge 56 engages the center of edge portion 12 of the blank 13. The roller is then progressively fed inwardly of the blank to operate on it in a manner described in the specification as follows:

The penetration of the edge portion 56 of the roller 10 into the blank 13 splits the edge portion 12 of the latter peripherally therearound by dividing such edge portion into the two spaced or divergent walls 27 and 28, as shown in Figs. 8 and 10. When the splitting roller 10 has been advanced toward the workholder means 14 for a feeding distance sufficient to cause the edge portion 56 to penetrate and split the blank for the desired depth, the wall portions 27 and 28 will be spread or deflected toward the bevel faces 43 and 44 of the workholder members 35 and 36 and will be pressed against these faces by the action of the sloping side walls 55ᵃ and 55ᵇ of the ridge portion 55.

After that operation, the roller 10 is removed from engagement with the blank and a forming roller 11 is fed into the groove to reshape its bottom 33 and form beads 31, 32 on the outer edges of the flanges as shown in Fig. 9.

Appellee's position is that the method of the count is supported not only by the operation performed by the splitting roller alone, but also by the process performed by that roller in combination with the forming roller 11.

While the board's opinion interjects a reference to the forming roller 11 in its analysis of appellee's disclosure, its conclusion that the count is supported was clearly predicated on the *modus operandi* of the splitting tool 10 alone. That analysis, with the aforesaid comment regarding roller 11 omitted, reads:

This method [of the count] is disclosed in the Pacak application Serial

No. 854,957 (as well as the later Pacak applications) wherein there is disclosed apparatus and method for forming a groove in a metal discshaped blank 13 which is being rotated. Initially the blank is slit by the tool 10 which is provided at its periphery with a knife-edge provided by the converging faces of the tool. * * * The penetration by the splitting tool 10 necessarily provides the two angularly extending flanges, * * * and presses these flanges laterally into engagement with the bevel faces 43, 44 of the work holder. The slitting and penetrating action of the cutter 10 to the desired depth is obviously a progressive action, which results in a lateral spreading out and expansion of the flanges while the cutter is being pressed into the slit.

The board further stated:

We find nothing in the wording of the count which would cause ambiguity. Its meaning is clear and there is no reason for referring back to the Skinner et al. specification to determine what is meant by the broad language used, which is given its well understood meaning, by us, and is not considered to be so restrictive as to provide only a meaning as argued and presented by Skinner et al.

We think the board's analysis clearly demonstrates that the terms of the count find full support in the procedure appellee performs with splitting tool 10 without regard to tool 11. Although appellants argue that there is a difference between "slitting" recited in the count and "splitting" as applied to Pacak's tool 10, we see no ground for any distinction between those terms in the present context. Neither do we find convincing an argument by appellants that the count defines a "separate" pressing operation interposed between the initial slitting and the subsequently recited expanding and slitting operations which is not met by Pacak tool 10. The broad language of the count obviously does not preclude pressing of the flanges taking place at the same time as "expanding * * *

[the] groove while progressively slitting the blank" and also being performed by the same tool.

■ The main thrust of appellant's argument is that the count should be interpreted in light of their patent[4] from which it is derived and that, interpreted to give recognition to the differences between the method the patent discloses and the Pacak method, it distinguishes from the latter. Appellants point out that the Pacak patent, which issued on the same application (serial No. 854,-957) that the board expressly found to support the count, was cited as a reference in the prosecution file of their patent. They further refer to Patent Office Rule 231(e), which provides for reference to the prior art of record in the patent file for construing the issue (count) in the determination of a motion to dissolve an interference between an application and a patent.[5] It is appellants' contention that, if the count is construed as supported by Pacak's disclosure, it is unpatentable over the Pacak patent as well as other patents cited in appellants' patent file that are prior art against Pacak also.

■ The difficulty with appellants' position is that they do not point out any language in the count that can reasonably be limited to a meaning that precludes the reading on Pacak's disclosure. Instead, they apparently rely on Sockman v. Switzer, 379 F.2d 996, 54 CCPA 1563 (1967), and cases cited therein,[6] as authority for resorting to the patent for interpretation of any interference count copied from a patent. However, those cases do not overrule the long-recognized principle that the patent

in which counts originated will be referred to for interpretation only where there is an ambiguity that requires resolution.[7] Recognizing that ambiguity may arise from the context in which a word or phrase is used even though lacking in the word or phrase per se, this court in *Sockman* found ambiguity in the counts and referred to the Sockman patent to resolve it. Here we agree with the board that the count is couched in such terms that no ambiguity arises in applying it to the Pacak disclosure.

■ Nor do we find Rules 231(e) and 258(c)[8] to be of any aid to appellants. Since the count is free of ambiguity and its terms are so broad as to be clearly supported by the Pacak applications, unexpressed limitations cannot be read into it to limit its coverage to appellants' disclosure. See Deibel v. Heise & Schumacher, 46 F.2d 570, 18 CCPA 907 (1931). Thus, the board correctly found no reason to act under the proviso of the rules that "the prior art of record in the patent file may be referred to for the purpose of construing the issue."

Two matters remain for consideration. One is a motion by appellants to strike from the record certain matter identified as Exhibits A, B, C and D (originally attached to appellee's brief before the board) and all references in the brief to those exhibits. Appellants regard the Exhibits as amounting to unsworn testimony on behalf of appellees. However, we deem them no more than part of an argument regarding the operation of appellee's disclosed apparatus and have considered them only as such. The motion to strike is denied.

---

4. Appellant's patent discloses a sheave-forming process in which a separate forming roller engages the peripheral groove in the blank simultaneously with a slitting roller at a point displaced therefrom. The forming roller laterally presses the flanges as formed by the slitting roller, while the latter roller progressively moves further into the blank.

5. Rule 258(c) makes a similar provision with respect to final hearing.

6. Liebscher v. Boothroyd, 258 F.2d 948, 46 CCPA 701 (1958), and Rajchman v. Lockhart, 339 F.2d 233, 52 CCPA 853 (1964).

7. See Martin v. Friendly, 58 F.2d 421, 19 CCPA 1181 (1932) and In re Beale, 378 F.2d 970, 54 CCPA 1472 (1967).

8. See note 5.

The other matter is a question of assessment of costs for printing some 110 additional pages of material in the record at the request of appellee. We find that appellee was reasonably justified in requesting the printing of only 25% of that material, and we assess 75% of the cost of printing the material in controversy against him.

The decision is affirmed.

Affirmed.

59 CCPA